## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                              :

BRIAN CALLERY,                           :     No. 2:20-cv-03652-CMR

                      :

                Plaintiff,         :

                      :

        v.                       :

                      :

                      :

HOP ENERGY, LLC,                 :

                      :

                Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

### DEFENDANT HOP ENERGY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT

HOP Energy, LLC ("HOP") submits this Memorandum of Law in support of its motion (the "Motion"), pursuant to Fed. R. Civ. P. R. 12(b)(6), to dismiss plaintiff Brian Callery ("Callery")'s Class Action Complaint (the "Complaint").

## I.   PRELIMINARY STATEMENT

In this action, Callery -- a consumer who claims to have been overcharged for heating oil purchased from HOP under a "CAPPED PRICE PROGRAM" contract -- attempts to parlay insufficient allegations about an alleged overcharge of $30 into a multi-claim, multi-million dollar, multi-state class action. His Complaint should be dismissed for the following reasons:

- The Complaint should be dismissed in its entirety because it fails to allege enough facts to state a claim that is plausible on its face.

- Callery's claim for breach of contract should be dismissed because the Complaint fails to allege that Callery satisfied the conditions precedent under his contract before filing suit.

- Callery's claim for breach of the covenant of good faith and fair dealing should be dismissed because it is duplicative of his claim for breach of contract.

1

6227396.4

- Callery's claims for common law fraud and violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1-201-9.2 ("*UTPCPL*"), should be dismissed under the economic loss doctrine and under Rule 9(b).

- Callery's common law fraud claim should also be dismissed because it is duplicative of his claim for breach of contract under the "gist of the action doctrine."

- Callery's claims for violations of the New York, Connecticut, Delaware, Massachusetts, New Jersey, Rhode Island and Vermont consumer protection statutes should be dismissed because he is not covered by and did not sustain injury under those statutes.

- Callery's claims are time barred due to the various Statutes of Limitations.

- Plaintiff's request for punitive damages should be stricken because Callery waived punitive damages in his contract with HOP.

## II.   **FACTUAL BACKGROUND**[1]

### A.   **The Parties**

Plaintiff Callery is a natural person residing in Chester County, PA. (Compl. ¶ 1)[2]. Defendant HOP is a Delaware limited liability company with its principal place of business located in White Plains, NY 10604." (*Id.* ¶¶ 2-3).  (*Id.* ¶ 3).

### B.   **HOP's Business Structure and Pricing Program**

HOP provides residential and commercial heating oil and services to customers in Pennsylvania, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware and New York.  (Compl. ¶ 3).  HOP offers variable, fixed, and capped pricing programs for its full service customers receiving automatic delivery service (which includes payment terms and

---

[1]  For purpose of the Motion, HOP assumes that the factual allegations set forth in the Complaint are true.

[2]  References to "Compl. ¶__" or "Compl. Ex. __" are to the Complaint at the indicated paragraph(s) or exhibit(s).

twenty-four hour service, as opposed to the no-frills, self-monitoring pay as you go program known as "Dollarwise").  (Compl. ¶ 6).

The prices under the variable price program are based upon the prevailing retail price and increase or decrease as market conditions fluctuate.  The fixed price program provides the most certainty to customers, who receive oil at a fixed price over a year and requires customers to sign an annual contract.  (Compl. ¶ 6).  Under the capped price program, a customer signs an annual contract under which he or she cannot be charged more than a set maximum price but pays the lower "prevailing retail price" if it drops below the maximum price.  (Compl. ¶ 6).

### C. **Callery's Contract with HOP**

According to the Complaint, on April, 2, 2020, Callery entered into a Retail Heating Oil Delivery and Services Agreement with HOP providing for "automatic delivery" of heating oil to his residence under which "Plaintiff would pay for, heating oil under a Capped Price Program." (*Id.* 9) (the 'Contract')" (Compl. ¶ 8; Contract, Ex. "A" at 1). Although omitted from the Complaint, the Contract provides Callery with a promotional rate of $1.499/gallon for the first oil fill (Compl. Ex. A at 1.), and describes the capped program in part as follows:

> You have elected our Capped Price Program, for the period from 04/02/2020 through 04/30/2021 (the "Pricing Period"), we will deliver up to 1000 gallons of home heating oil to you at a price not to exceed $2.099 per gallon, plus applicable taxes. If our prevailing retail price for home heating oil drops below the Capped Price during the Pricing Period then you will pay our prevailing retail price for home heating oil."

(Compl. Ex. A at 1).  In other words, Callery is guaranteed a price that is capped no higher than $2.099/gallon, but will pay less than the "Capped Price" if the "prevailing retail price" drops below the "Capped Price."  The Contract states that "[h]ome heating oil deliveries will be made to you on an automatic delivery basis," rather than under the low-cost program in which customers monitor their own tanks.  (Compl. Ex. "A" at 1).

3

In a section entitled "**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL,**" the contract provided Callery with explicit instructions on how to resolve a price dispute if he believed his bill was incorrect:

> If you think your bill is wrong, or if you need more information about a transaction on your bill, *write us on a separate sheet* at the address listed on your bill as soon as possible. *We must hear from you not later than sixty (60) days after we sent you the first bill on which the error or problem appeared.* You can telephone us, *but doing so will not preserve your rights*. In your *letter*, give us the following information: (a) Your name and account number; (b) The dollar amount of the suspected error; and (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

(Compl. Ex. A at 4) (emphasis added).

The next section, entitled, "**YOUR RIGHTS AND OUR RESPONSIBILITIES** *AFTER WE RECEIVE YOUR WRITTEN NOTICE*" provides, in pertinent part:

> We must acknowledge your *letter* within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days (sixty (60) days in Maryland), we either correct the error or explain why we believe the bill was correct.

(Compl. Ex. A at 4) (emphasis added). Callery does not allege, nor can he allege, that he complied with this *required* condition precedent before proceeding with this action.

### D.  The Alleged Overcharge

After signing the Contract on April 2, 2020, Callery received his first oil fill at the promotional sale rate of $1.499/gallon.   (Compl. Ex. A at 3). On May 19, 2020, Callery received another oil fill at the capped price rate of $2.099/gallon for a total of $113.35. (Compl. ¶ 10). Immediately after receiving this delivery, Callery telephoned HOP and asked for the current prevailing rate for heating oil. *(*Compl. ¶ 11). According to Callery, he spoke to a sales representative and was told that the prevailing retail price for oil was $1.55/gallon. (*Id.*). Callery informed the sales representative that he was under contract, and asked why he was charged

6227396.4

$2.099/gallon rather than $1.55/gallon.  (Compl. ¶ 11). Callery was eventually transferred to another representative and was informed that the prevailing retail rate for heating oil was $2.49/gallon.  (Compl. ¶ 11).  When Callery questioned why he had been told that the prevailing retail price was $1.55/gallon, the second representative informed Callery that the earlier sales representative did not know what the prevailing retail price was.  (Compl. ¶ 11).   Based upon these scant allegations regarding an isolated telephone call, Callery proceeds to allege that HOP engaged in a multi-year, multi-state scheme to intentionally overcharge "numerous customers" including Callery for home heating oil, and without any factual support, because there is none, allege that HOP quoted to capped customers a "Fake Retail Price" that "bore no relation to the retail prices that HOP or other providers in the market actually quoted or charged for heating oil," when in fact HOP quoted him the prevailing retail price when asked.  (Compl. ¶¶ 12-14).

### E.  The Complaint

On June 23, 2020, Callery commenced this action by filing the Complaint, which is styled a putative "Class Action Complaint" purportedly filed on behalf of a six-year class of customers of HOP with contracts for the delivery of heating oil under terms "including a capped pricing program and/or a prevailing retail price of the heating oil to a residence."  (Compl. ¶ 15)[3].

The Complaint asserts six "Counts."  Count One asserts a claim for breach of contract and Count Two asserts a claim for breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 31-36). Neither claim includes any factual detail.  Instead, both claims incorporate the factual allegations in an earlier section entitled "Events Giving Rise to this Claim."  (Compl. ¶¶ 31-36). Consequently, Callery's claim for breach of the covenant of good faith and fair dealing is based upon the very same factual allegations as his contract claim.

---

[3]  The Complaint divides the class into two sub-classes:  (1) "those Class Members who are residents of Pennsylvania (the 'Resident Class'); and (2) those Class Members who are not residents of Pennsylvania (the 'Non-Resident Class') (collectively the 'Class Members')."  (Compl. ¶ 16)

6227396.4

Count Three asserts a claim for fraud alleging that HOP "made false statements of fact" and "concealed their intention to charge Class Members far higher than prevailing market prices for heating oil." (*Id.* ¶¶ 37-40).

Count Four assert a claim for violation of UTPCPL alleging that Plaintiffs engaged "in fraudulent and deceptive conduct which created a likelihood of confusion or of misunderstanding." (*Id.* ¶¶ 41-44). Count Five[4] asserts a claim for violation of the New York Consumer Protection Law alleging that "HOP [has] engaged in deceptive acts or practices in the conduct of their business." (*Id.* ¶¶ 45-47). Count Six asserts a "catch-all" claim alleging that HOP violated the non-residents' consumer protection rights under the laws of Connecticut, Delaware, Massachusetts, New Jersey, Rhode Island, and Vermont. (*Id.* ¶¶ 48-57). Counts Three through Six each seek, among other relief, compensatory and punitive damages.

The Complaint was served on July 8, 2020, and HOP filed a notice of removal on July 28, 2020.

## III.    ARGUMENT

### A. The Complaint Should Be Dismissed Because It Fails to Allege a Claim That Is Plausible on Its Face.

To withstand a motion to dismiss Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. The defendant's culpability must be more than merely "conceivable;" otherwise, the "complaint must be

---

[4] The Complaint asserts six "Counts." Due to an apparent error, they are numbered: "Count One," "Count Two," "Count Three," "Count Four," "Count IV," and "Count V." For ease of reference, "Count IV" in the Complaint is referred to herein as "Count Five" and "Count V" in the Complaint is referred to herein as "Count Six."

6227396.4

dismissed." *Twombly*, 550 U.S. at 569.  While "well-pleaded factual allegations" should be taken as true, *Beverley Enters., Inc. v. Trump*, 182 F.3d 183, 186 (3rd Cir. 1999), "conclusory allegations or legal conclusions masquerading as factual allegations" are not to be credited. *Bailey v. Reed*, 2002 WL 276470, at \*1 (3rd Cir. Feb. 27, 2002) (citation omitted).  Exhibits that are attached to a complaint or upon which the plaintiff's claims are based can be considered in deciding a motion to dismiss pursuant to Rule 12(b)(6).  *Rossman v. Fleet Bank (R.I.) Nat'l Assoc.*, 280 F.3d 384, 388 n.4 (3rd Cir. 2002).

Each of the six Counts in the Complaint is predicated upon an isolated telephone call in which Callery claims to have been quoted a price of \$1.55 "for heating oil." (Compl., ¶11).  The Complaint fails to indicate whether the \$1.55 price that Callery claims to have been quoted was for home heating oil "on an automatic delivery basis," as provided in Callery's Contract for such services, or if it was for HOP's lower cost "Dollarwise" program, or whether the price quoted was based upon a promotional sale rate, such as the "[f]irst delivery promotional price \$1.499" that Plaintiff himself received, as referred to in his Contract.  (Compl. Ex. "A.").  The Complaint also fails to include any substantiation – such as an attempt to verify prices charged by other providers or any statistical analysis – regarding what the undiscounted "prevailing retail price" actually was on May 19, 2020.  Simply put, the Complaint does not plead "enough facts" or "factual content" to permit "the court to draw a reasonable inference" that Plaintiff was charged more than the "prevailing retail price" for home heating oil "on an automatic delivery basis" as referred to in his contract.  *Twombly*, 550 U.S. at 570 (2007); *Iqbal*, 556 U.S. at 678.

**B.  <u>Count One, for Breach of Contract, Should Be Dismissed Because Callery Failed to Satisfy all Conditions Precedent to Asserting a Claim for Breach of Contract.</u>**

"A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim" *Chemtech Intern., Inc., v. Chemical Injection Technologies, Inc.*, 247 Fed. Appx. 403, 405 (3rd Cir. 2007).  In other words,

"the plaintiff has the burden of proof to show that there was a contract, that all conditions precedent for performance were satisfied, and that the defendant breached the agreement. *Bank v. John Hancock Mut. Life Ins. Co.*, 524 F.Supp. 884, 891 (E.D. Pa. 1981).

Here, the Contract explicitly required Callery to submit a *written letter* if he felt his bill was incorrect.  (Compl. Ex. A.).  The Complaint does not allege that he did so.  Consequently, it fails to state a claim for breach of contract and the First Cause of Action should be dismissed.

C. <u>Count Two, for Breach of the Covenant of Good Faith and Fair Dealing, Should Be Dismissed Because It Is Duplicative of Count One, for Breach of Contract.</u>

"To the extent the fair dealing claim is merely a restatement of the breach of contract claim, it should be dismissed because Pennsylvania does not recognize a separate cause of action for breach of good faith and fair dealing for the actions forming the basis of the breach of contract." *Wulf v. Bank of America, N.A.*, 798 F.Supp.2d 586, 594 (E.D. Pa. 2011); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3rd Cir. 2000) (holding that a party is not entitled to maintain an independent implied duty of good faith claim where the allegations of bad faith are identical to a claim relied under an established cause of action); *McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, 2009 WL 1292808, at *2 (W.D. Pa. May 7, 2009) ("A breach of the duty of good faith and fair dealing is a breach of contract claim, and not a separate and independent cause of action."); *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) ("Where a duty of good faith arises, it arises under the laws of contracts, not under the laws of torts").

Here, Count Two, for breach of the covenant of good faith and fair dealing, like Count One, for breach of contract, merely incorporates factual allegations in the Complaint and adds nothing to them.  Both claims also seek the exact same damages:  $50,000.  Because Counts One and Two are based upon the same facts and seek the same damages, Count Two, for breach of the covenant of good faith and fair dealing, is duplicative and should be dismissed.

**D. Count Three, for Common Law Fraud, and Count Four, for Violation of the UTPCPL, Should Be Dismissed for Numerous Reasons.**

**1. *Callery's Claims for Common Law Fraud and Based Upon UTPCPL Fail Are Barred by the Economic Loss Doctrine.***

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinkski v. Ford Motor Co.,* 286 F.3d 661, 674-81 (3rd Cir. 2002). This doctrine is "designed to…establish clear boundaries between tort and contract law." *Id.* at 680-681.

The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Pestine v. Liberty Mut. Group, Inc.*, 2014 WL 4215535, at *4 (M.D. Pa. August 25, 2014) (quoting *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007).

In *Werwinski* 286 F.3d at 671, the Third Circuit concluded, under Pennsylvania law, that the "economic loss" doctrine, bars both (1) intentional fraud claims solely for economic loss, and (2) statutory claims under UTPCPL that are based on allegedly fraudulent conduct (such as Callery's claims here). 286 F.3d at 674-81. *See also McGuckin v. Allstate Fire and Cas. Ins. Co.*, 118 F.Supp.3d 716, 719 (E.D. Pa. 2015) ("McGuckin's UTPCPL claim is barred by the economic loss doctrine claim.").

Here, Callery's claims are for economic losses only – "loss that is neither physical injury nor damage to tangible property." *Sarsfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 556 (M.D. Pa. 2010) (citing *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3rd Cir. 1997)). His alleged right to recovery is based solely on his contract with HOP. As such, his recovery lies in contract.

Moreover, because the fraud claims here flow from the very same alleged conduct comprising the breach of contract, and not from any extraneous conduct, any attempt to argue the fraudulent inducement exception to the economic loss doctrine fails:

> An exception to the applicability of economic loss doctrine exists for certain claims based on fraud in the inducement where the fraud is extraneous to the alleged breach of contract, not interwoven with the breach of contract. Thus inducement claims remain viable *only* when a party makes a representation extraneous to the contract, but not when the representation concerns the subject matter of the contract or the party's performance.

*McGuckin v. Allstate*, *supra*, 118 F.Supp.3d at 721 (internal quotations and citations omitted). Accordingly, Plaintiff's UTPCPL claim and common-law fraud claim are barred under the economic loss doctrine.

## 2. *The Common Law Fraud Claim Is Barred by the "Gist of the Action Doctrine."*

Under the "gist of the action doctrine," a tort claim, including one for common law fraud, is barred "'where the duties allegedly breached were created and grounded in the contract itself ... [or] the tort claim essentially duplicates a breach of contract claim or the success of [the tort claim] is wholly dependent on the terms of the contract.'" *Axcan Scandipharm, Inc. v. Am. Home Prod.*, 2003 WL 21731124, at *2 (Pa. Com. Pl. July 22, 2003) (quoting *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 18 (Pa.Super.2002)). A claim for fraudulently inducing one to enter into a contract may be barred by this doctrine. *Axcam Scandipharm, Inc.*, 2003 WL 21731124, at *2. In this regard, "the gist of the action doctrine" applies to bar fraudulent inducement claims where "the false promise becomes an obligation under the ensuing contract" and the claim is merely that the defendant did not intend to perform the contract. *Galdieri*, 245 F. Supp. 2d at 650. *Korn v. Kertesz*, 2007 WL 3283400, at *6 (E.D.Pa. Nov.6, 2007).

The Complaint alleges that HOP induced Callery to the Contract by representing that HOP will comply with its agreement that the price will "follow[s] the market, but not go above

[Callery's] CAP rate."  (Compl. ¶¶ 6, 9, 12, 14, 38.)  But this is merely what the contract said. The Complaint confirms this by "aver[ring] that HOP knew at the time it entered into the Contract it did not intend to honor its promise to charge Plaintiff the actual retail price for heating oil …." (Compl., ¶ 12)  Thus, the "gist" of Callery's claim for common law fraud, is that HOP did not intend to comply with the Contract, and then breached it by overcharging him. Accordingly, the "gist of the action" doctrine bars the claim for common law fraud.

### 3. *Callery's Claims for Common Law Fraud and Under UTPCPL Claim Fail to Meet the Heightened Pleading Requirement under Fed. R. Civ. P. § 9(b).*

A claim for common law fraud or under UTPCPL must satisfy the heightened pleading requirements of the Fed. R. Civ. P. Rule 9(b).  "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007).  The plaintiff must plead "the 'who, what, when, where, and how' of the events at issue." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007).

Callery's claims for common law fraud and under UTPCPL fail to comply with Rule 9(b).  Instead, his allegations are wholly speculative and fail to meet even the most basic pleading requirements of Rule 8, let alone Rule 9(b).  He fails to allege how HOP's capped prices failed to follow the market or even to define what "the market" is.  Is the market the commodity price of oil on the New York Stock Exchange?  Is the market HOP's competitors? He also fails to allege how HOP's pricing was not competitive and alleges no facts regarding how competitors offered cheaper pricing.  Most egregiously, he fails to give any factual support to the outrageous claim that HOP participated in a scheme to quote a "Fake Retail Price" to all of its capped customers. In short, Callery has not provided any information in the Complaint to put HOP "on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 201. He even failed to allege the identity of the sales representative who allegedly told him the

prevailing rate on May 19, 2020, was $1.55/gallon.  *See e.g., Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3rd Cir. 1999) ("The complaint fails to attribute the statement to any specific member of the GNC management. Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of the allegedly fraudulent statements"); *Granite State Ins. Co. v. UJEX, Inc.*, 2005 WL 1618792, at \*8 (D. N.J. July 11, 2005) (dismissing fraud claim under Rule 9(b) where complaint was utterly devoid of the averments requirement by Rule 9(b), including the identity of the allegedly speaker).  Consequently, the Third and Fourth Causes of Action should also be dismissed on this ground.

### E.  Counts Five and Six, for Violation of Seven States' Consumer Protection Statutes, Should Be Dismissed Because Callery Lacks Standing To Bring Consumer Protection Claims Under Consumer Protection Statutes of States Where He Did Not Sustain Injury.

Callery asserts claims for alleged violations of the New York, New Jersey, Rhode Island, Delaware, Vermont and Massachusetts consumer protection statutes.  However, he fails to allege that he purchased heating oil from HOP in any of those states or that he otherwise suffered injury in any of those states.  For this reason, he lacks standing to sue under the consumer protection laws of these states.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001).

A state's statute cannot create a cause of action for an out-of-state plaintiff who alleges an out-of-state injury.  *New York Life Ins. Co. v. Head*, 234 U.S. 149, 169 (1914) (noting that "[t]his is so obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound.").

Article III of the Constitution requires that a plaintiff have standing to assert his claims.  Constitutional standing requires:

> (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection

12

> between the injury and the conduct complained of; and (3) that it
> must be likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.

*Winer Family Trust v. Queen*, 503 F.3d 319, 324 (3d Cir. 2007).

Standing is a threshold issue for any case, including class actions. "A plaintiff must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

> That a suit may be a class action…adds nothing to the question of
> standing, for even named plaintiffs who represent a class must
> allege and show that they personally have been injured, not that
> injury has been suffered by other, unidentified members of the
> class to which they belong and which they purport to represent.

*Lewis v. Casey*, 518 U.S. 343, 357 (1996).

But instead of pleading facts showing that he sustained injury from a violation of the consumer protection statutes of New York, New Jersey, Rhode Island, Delaware, Vermont or Massachusetts, in purporting to assert claims based upon those statutes, Callery relies solely upon injuries allegedly sustained by unidentified members of the class he purports to represent. Callery's claims under state consumer protection laws must be grounded upon an injury sustained with each such state. Because Callery has not, and cannot, allege that he suffered any such injury, he lacks standing to assert consumer protected claims under any such state.

To the extent that Count Six asserts a claim under the Massachusetts consumer protection statute, Massachusetts General Law Chapter 93A, Regulation of Business Practice for Consumer Protection (the "Massachusetts Statute"), it is barred for the additional reason that Callery failed to send a written demand prior to filing suit. To assert a claim under the Massachusetts Statute, Callery was required to send a written demand for relief to a prospective defendant at least 30 days before he filed the Complaint. Mass. Gen. Laws ch. 93A § 9. This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. S. New*

13

*England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 333 N.E.2d 202, 204 (1975)).   Massachusetts courts apply this demand requirement strictly. *See City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 506 N.E.2d 106, 109 (1987) ("The failure of the City to allege the sending of a demand letter is fatal to its § 9 claim."); *Roberts v. Crowley*, 538 F.Supp.2d 413, 420-21 (D.Mass.2008) (granting summary judgment to HOP because plaintiff had not filed a demand letter before suit).

## F.  Several of Callery's Causes of Action Are Time Barred.

Callery seeks to represent a class across multiple states "who entered into contracts with HOP for the delivery of heating oil to a residence…during the time period commencing six years before the filing date of this action." (Compl. ¶ 15). To the extent Callery seeks to assert claims that are beyond applicable statutes of limitation, those claims should be dismissed.   More specifically: Pennsylvania's statute of limitations bars breach of contract claims beyond four years (*see* 42 Pa.C.S.A. § 5525(a)(8)) and bars claims of common-law fraud and breach of the implied covenant of good faith and fair dealing that are beyond two years. *See* 42 Pa.C.S.A. § 5524(a)(7). Similarly, Consumer Protection claims brought in New York, Delaware and Connecticut must be commenced within three years. NY CPLR 214(2); 10 Del. C. § 8106(a). C.G.S.A. § 42-110g(f). Massachusetts has such a statute of limitations of four years. M.G.L.A. 260 § 5A.  To the extent the Complaint seeks to assert any such claim beyond the three year time period in New York, Delaware and Connecticut, and four years in Massachusetts, it is timed barred, and therefore must be dismissed.

## G.  Callery's Request for Punitive Damages Should be Stricken.

Callery seeks punitive damages on Counts Three through Six.  Yet, in Section 11 of the Contract, the parties waived any claim for punitive damages.  Further "[t]he UTPCPL … does not confer a right to impose punitive damages." *Richards v. Ameriprise Financials, Inc.*, 152

14

A.3d 1027, 1034 (E.D. Pa. 2016).  Consequently, Callery's request for punitive damages should be stricken.

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the Complaint in its entirety, with prejudice and grant such other relief as it deems just and proper.

Respectfully submitted,

Dated:  August 25, 2020              */s/ Edward T. Butkovitz*
Edward T. Butkovitz
**KLEINBARD LLC**
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA  19103
(215) 568-2000
ebutkovitz@kleinbard.com


William M. Moran (admitted *pro hac vice*)
Andrew S. Halpern
Breahna S. Wright (admitted *pro hac vice*)
**OTTERBOURG P.C.**
230 Park Avenue
New York, NY 10461
(212) 661-9100
wmoran@otterbourg.com
ahalpern@otterbourg.com
bwright@otterbourg.com

*Attorneys for Defendant HOP Energy, LLC*