**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN CALLERY, | : | CIVIL ACTION NO.  2:20-cv-03652 (CMR) |
| | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| vs. | : | |
| | : | *Electronically filed* |
| HOP ENERGY, LLC, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

This suit alleges a fraudulent scheme by the Defendant to overcharge customers for heating oil by promising to charge the lower of a Capped Price or prevailing retail price, but failing to give customers the benefit of falling market rates.  Defendant's representation that its rates "follow the market" was a flat out lie.  Defendant's representation that it charges its Capped Price customers the lesser of their Capped Price or prevailing market price is likewise a lie. Plaintiff alleges that Defendant engaged in a scheme to create a Fake Retail Price for its Capped Price customers that bore no relation to actual market prices.  We know this because Plaintiff telephoned Defendant's office and asked what its prevailing retail price of heating oil was, and Defendant's sales representative quoted a price ($1.55/gallon) that was $.94/gallon lower than what another of Defendant's agents contended was Defendant's prevailing retail price, ($2.49/gallon) <u>for the purpose of its Capped Price contracts</u>. That is a premium of over 60%.

Defendant moves to dismiss under a variety of increasingly weaker and weaker theories, beginning with the allegation that Plaintiff's claims are implausible on their face because he has not produced enough evidence, and going downhill from there.  Defendant has even thrown in a bizarre assertion that Plaintiff's contract claim is barred because he supposedly did not comply

with the notice requirements of the Fair Credit Billing Act. (Plaintiff did not bring a claim under that law, and in any event he did complain in writing within sixty days, as that FCBA notice in the contract specifies.) Plaintiff's claimed fraudulent scheme is not only plausible, schemes like this are all too common.[1]

Plaintiff's Complaint states valid claims for breach of contract, breach of the covenant of fair dealing, fraud, and violation of the consumer protection laws of Pennsylvania and the other states where Defendant has conducted its deceptive business practices. Defendant's Motion should be denied.

I.    FACTUAL BACKGROUND

Defendant HOP Energy, LLC, through its Chester County office, DDM Energy and through many other offices, sells home heating oil to customers like Plaintiff Brian Callery. The Complaint outlines a fraudulent scheme in which Defendant signs customers up to contracts after representing to them that under Defendant's Capped Price Program "your home heating oil price follows the market but doesn't go above your CAP rate." Complaint at ¶6. The contract represented that customers would be charged the lower of the customer's Capped rate or "our prevailing retail price." Id. at ¶9. Mr. Callery signed a Capped Price contract at the rate of $2.099/gallon. But when heating oil prices dropped dramatically and Mr. Callery placed an order, Defendant did not give him the benefit of the dropped market price. Instead it charged him $2.099/gallon, far above prevailing retail prices in the area. Complaint at ¶10. Surprised,

---

[1] A very similar class action suit against another heating oil provider was settled in the Eastern District of New York last year. See Donnenfeld v. Petro Settlement Agreement, Case 2:17-cv-02310, Document 63-3, filed 05/06/19, approved 12/5/19. Under the terms of that settlement, the defendant's customers were refunded the difference between the defendant's Ceiling Price (a/k/a/ capped price), which they were charged, and Defendant's Variable Price, when it was lower.

Mr. Callery called his local HOP Energy office and asked what their prevailing retail price of heating oil was. He was told that Defendant's prevailing retail price for heating oil was $1.55/gallon. Complaint at ¶11. When Plaintiff stated that he was under contract and wanted to know why he was charged $2.09 for heating oil, he was transferred to a different, female agent of Defendant who told him that Defendant's prevailing retail price, for the purpose of Capped Price contracts, was $2.49/gallon. Id. When Plaintiff questioned why the first representative who answered the phone told him that the prevailing retail price for heating oil was $1.55, the female representative said that they were the sales department and did not know what the prevailing retail price for heating oil was.

Defendant apparently contends that it is free to set its "prevailing retail price" at any level it chooses for its Capped Price contracts, regardless of movements in the market price of residential heating oil. But that is not what prevailing retail price means. The dictionary definition of "prevailing" is "widely existing; prevalent." "Prevalent," in turn, means "widely spread or current; generally received, adopted or practiced." *Prevailing* and *prevalent,* Webster's New Universal Unabridged Dictionary (Deluxe Second Ed. 1983). By its plain meaning, "prevailing retail price" for the purpose of this contract must bear some relationship to the prices widely existing, adopted or practiced in the relevant retail market. Defendant's idiosyncratic way of setting its own, personal version of "prevailing retail price" for its Capped Price customers bore no relation to the plain meaning of the term prevailing retail price. In fact, it represented a 60% premium over what Defendant's own sales representatives quoted to Plaintiff when he asked what Defendant's prevailing retail price was. The Fake Retail Price was fraudulent.

3

## II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the

> reviewing court to draw on its judicial experience and common
> sense."

Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (internal citations omitted).

### III.   DEFENDANT'S MOTION TO DISMISS FAILS

#### A.   PLAINTIFF'S CLAIMS ARE PLAUSIBLE ON THEIR FACE

For its first argument, Defendant argues that Plaintiff's Complaint must be dismissed because it is not plausible on its face. But in making this argument, Defendant misstates the facts alleged in the Complaint, and inserts new facts that do not appear in the Complaint, which is not permitted under Rule 12(b)(6). Defendant states that Plaintiff called the Defendant's office and was quoted a price of $1.55 for heating oil, citing Paragraph 11. But that is not what Paragraph 11 states. Paragraph 11 specifically states that Plaintiff asked Defendant's agent what its "prevailing retail price for heating oil was." That is the exact phrase that appears in the contract that is the basis for this action, "prevailing retail price." By leaving out the key language drawn from the contract itself, Defendant makes an impermissible misleading argument that must be rejected.

Defendant then goes on to complain about what the Complaint does not say, e.g., whether the price Defendant quoted was for its automatic delivery program or for its "Dollarwise" program or whether it was a promotional rate. It is for Defendant to explain what its pricing programs are and how that supposedly excuses its lies about the price it charged Plaintiff. "Plaintiffs are not required to plead facts that, if true, definitely rule out all possible innocent explanations." In re Generic Pharmaceuticals Pricing Antitrust Litigation, 368 F.Supp.3d 814, 832 (E.D.Pa. 2019). That will perhaps be an argument Defendant can make at trial, after full discovery. But it is completely inappropriate for a Motion to Dismiss. The claim in this case is that Defendant lied about its prices following the market and lied about what

prevailing retail prices were.  There is no claim about whether Defendant had the right to charge different prices for different services, e.g., monitoring its customers' oil tanks – so long as Defendant did so in good faith.  (A jury might be reluctant to find that a 60% premium for the service of monitoring the level of a customer's oil tank is reasonable or in good faith).  It is no defense to the charge of lying about prices following the market to say "but I monitored the level of your oil tank."  A heating oil provider can do both, and Defendant represented that its Capped Price program would do both.

Next, Defendant complains that the Complaint does not include enough evidence, e.g., what prices Defendant's competitors actually charged.  That is not an appropriate argument on a Rule 12(b)(6) motion.  The Complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.Pro. 8.  Plaintiff is entitled to take discovery before being required to provide all of the evidence that supports his claim.  Plaintiff has pleaded that the price Defendant's agent claimed was the prevailing retail price for Capped Price customers, $2.49/gallon, was inflated and bore no relation to the actual prices Defendant or other providers in the market were actually charging.  Complaint ¶11-12. Plaintiff has specifically pleaded that Defendant's own agent who answered the telephone at Defendant's place of business stated to Plaintiff that Defendant's prevailing retail price of oil was $1.55/gallon.  Defendant cannot defeat that claim at this stage of the proceedings by demanding further evidence.

B.   THE CONTRACT'S FAIR CREDIT BILLING ACT NOTICE OF RIGHTS
     DID NOT CREATE A CONDITION PRECEDENT TO PLAINTIFF'S
     BREACH OF CONTRACT CLAIM

Defendant claims that Plaintiff's breach of contract claim must be dismissed because Plaintiff failed to satisfy a condition precedent.  This argument fails for multiple reasons.

First, the contract language clearly was not intended as a condition to any relevant duty of the

Defendant – it is form language <u>notifying customers of their rights</u> under the Fair Credit Billing

Act. Second, the supposed condition precedent is not a condition that qualified Defendant's duty

to charge the prices set forth in the contract. Third, Plaintiff did complain to Defendant in

writing within the purported required time limit – <u>by sending Defendant the Complaint in this</u>

<u>action</u>.

   The contract at issue contains a standard notice about "your rights and

responsibilities under the Fair Credit Billing Act." Ex. A to Complaint, pg. 4. It states that "we

must hear from you within 60 days after we sent you the first bill on which the error or problem

appeared." <u>Id</u>. This provision did not create a condition precedent under Pennsylvania law.

Rather, it notified Plaintiff of what he needed to do to preserve his rights under the Fair Credit

Billing Act, which Plaintiff has not asserted.

   "A condition is an event, not certain to occur, which must occur, unless its non-

occurrence is excused, before performance under a contract becomes due." <u>Shovel Transfer and</u>

<u>Storage, Inc. v. Pennsylvania Liquor Control Bd.</u>, 559 Pa. 56, 69, 739 A.2d 133, 139 (1999)

(quoting RESTATEMENT (SECOND) OF CONTRACTS § 224). "In order for an event to be a

condition, it must qualify a duty under an existing contract. Events which are part of the process

of formation of a contract, such as offer and acceptance are therefore excluded under the

definition of [condition]." <u>Id</u>. at cmt. c. Where a condition has not been fulfilled, the duty to

perform the contract lays dormant and no damages are due for non-performance. MURRAY ON

CONTRACTS, § 99. Generally, an act or event designated in a contract will not be construed as

a condition unless that clearly appears to be the intention of the parties. <u>Estate of Barilla</u>, 369

7

Pa.Super. 213, 535 A.2d 125 (1987); <u>American Leasing v. Morrison Co.,</u> 308 Pa.Super. 318, 454 A.2d 555 (1982).

The notice of rights and responsibilities under the Fair Credit Billing Act, upon which Defendant relies, is not labeled as a condition precedent. There is no indication whatsoever that it is intended to be a condition precedent. More importantly, this language <u>does not condition any duty of Defendant under the contract</u>. The duties at issue in this action are Defendant's duty to deliver heating oil and charge Plaintiff the lesser of the Capped Price or Prevailing Market Price, not any duty to participate in a billing dispute. These contractual duties in no way depend on whether or not Plaintiff gave written notice of Defendant's fraudulent bill. Rather, the only thing conditioned on Plaintiff's compliance with such "rights and responsibilities" is Plaintiff's ability to bring an action under the Fair Credit Billing Act.

Finally, Plaintiff did, in fact, complain to Defendant in writing within sixty days of the fraudulent bill. The delivery at issue occurred on May 19, 2020. Complaint at ¶10. Plaintiff's counsel mailed Defendant a letter on July 7, 2020, enclosing the Complaint in this action, which clearly sets forth all of the information called for in Page 4 of the Contract. <u>See</u> Exhibit A.

For all of these reasons, Defendant's argument that Plaintiff's breach of contract claim fails because of a supposed condition precedent should be rejected.

## C. PLAINTIFF HAS STATED A VALID CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Defendant asserts that Count Two, for breach of the covenant of good faith and fair dealing, should be dismissed because it is identical to Plaintiff's breach of contract claim. That is not the case. The Complaint alleges not only that Defendant breached the literal terms of the contract, by failing to charge the lesser of Plaintiff's Capped Rate or prevailing market price,

8

but also that Defendant acted fraudulently and in bad faith in other respects. First, Defendant acted in bad faith by engaging in a scheme whereby it created a false, inflated Fake Retail Price to quote to Capped Plan customers when they inquired why they were being charged their Capped Price. Complaint ¶12. Second, Defendant acted in bad faith on or about May 19, 2020, when dealing with Plaintiff over the telephone. Contrary to Defendant's obligation to act fairly and in good faith, Defendant's agent quoted a grossly high price and claimed it was the prevailing retail price, and further when Defendant's agent claimed that Defendant's sales department employees did not know what the prevailing retail price of heating oil was. Complaint ¶10-11.

In Somers v. Somers, 418 Pa. Super. 131, 136-37, 613 A.2d 1211 (1992), the Pennsylvania Superior Court explained that: "The general duty of good faith and fair dealing in the performance of a contract as found in The RESTATEMENT (SECOND) OF CONTRACTS § 205, has been adopted in this Commonwealth in Creeger Brick & Building Supply Inc. v. Mid–State Bank & Trust Co., 385 Pa.Super. 30, 35, 560 A.2d 151, 153 (1989), and Baker v. Lafayette College, 350 Pa.Super. 68, 84, 504 A.2d 247, 255 (1986), aff'd, 516 Pa. 291, 532 A.2d 399 (1987). A similar requirement has been imposed upon contracts within the Uniform Commercial Code by 13 Pa.C.S. § 1203. The duty of "good faith" has been defined as "[h]onesty in fact in the conduct or transaction concerned." See 13 Pa.C.S. § 1201. The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, Baker, supra, 350 Pa. Superior Ct. at 84, 504 A.2d at 255, and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse

of a power to specify terms, and interference with or failure to cooperate in the other party's performance. RESTATEMENT (SECOND) of CONTRACTS, § 205(d).

This action alleges a classic case of "evasion of the spirit of the bargain" and "abuse of a power to specify terms." Defendant apparently contends that it may set the "prevailing retail price" for the purpose of its Capped Price contracts without regard to actual fluctuation in market prices for retail heating oil, and without regard for the prices its own sales representatives quote to customers as Defendant's prevailing retail price. Where, as in this case, a plaintiff's complaint alleges both actions that breach the literal terms of the contract, as well as bad faith on the part of the defendant in the course of administering the contract, plaintiff's claim for breach of the covenant and fair dealing should not be dismissed, but rather should be considered as an additional part of his breach of contract claim. See Somers v. Somers, 613 A.2d at 1215 (vacating order granting demurrer to count alleging breach of implied duty of good faith in performance of contractual duties).

### D. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE

Plaintiff has stated a claim for intentional fraud. These allegations support both Plaintiff's common law fraud claim and his claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), the New York Consumer Protection Law, and the consumer protection laws of the other states where Defendant does business.[2] The

---

[2] The New York Consumer Protection Law, codified at NY Gen.Bus. Law 349, authorizes a private right of action by "any person who has been injured." §349(h). Accordingly, Plaintiff has standing to sue Defendant under that law. See Danganan v. Guardian Protection Services 645 Pa. 181, 179 A.3d 9 (2018) (residents of other states may bring claim under Pa. UTPCPL against Pennsylvania-based business because of broad, any persons language of statute). New York law does not apply the economic loss doctrine to intentional torts. In re General Motors LLC Ignition Switch Litigation, 257 F.Supp. 2d 372, 431 (S.D.N.Y. 2017).

Complaint alleges that Defendant induced Plaintiff to enter into the contract by making material, false representations of fact, before Plaintiff signed the contract. First, Defendant made the false statement on its website that under its Capped Price plan, "your home heating oil price follows the market but doesn't go above your CAP rate." Complaint ¶6. Plaintiff also alleges that Defendant made the following false statement of fact on its website "we have a consistent supply of home heating oil at competitive prices." Complaint ¶7. In addition, the Complaint alleges that the following statement in the pre-printed contract that Defendant provided to Plaintiff, for his consideration, was false when made, and Defendant knew it was false and intended such false statement to induce Plaintiff to enter into the contract: "if our Prevailing Retail Price for home heating oil drops below the Capped Price during the Pricing Period, then you (i.e., Plaintiff) will pay our prevailing retail price for home heating oil." Complaint ¶9, 12.[3]

Each of these false statements were made by Defendant before Plaintiff signed the contract at issue. A fraud claim based on such fraudulent inducement is not barred by the economic loss doctrine. Werwinski v. Ford Motor Co., 286 F.3d 661, 676 (3d Cir. 2002) (predicting that the Pennsylvania Supreme Court would adopt a blanket exception to the economic loss doctrine for intentional fraud); Wulf v. Bank of America, N.A., 798 F.Supp.2d 586, 595 (E.D. Pa. 2011).

In addition to the foregoing reasons why the economic loss doctrine does not bar Plaintiff's claims, with respect to Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection law and other states' consumer protection laws, the economic

---

[3] Plaintiff also alleges fraudulent representations after he signed the contract. Some, but not all courts make a distinction between fraudulent inducement, and fraudulent representations during the course of performance of the contract. For the purpose of this motion, the Court need not address that issue, since there are abundant allegations of fraudulent inducement in the Complaint.

loss doctrine does not apply at all.  In Werwinski, the Court of Appeals predicted that Pennsylvania courts would apply the economic loss doctrine to UTPCPL claims.  But since 2002, multiple Superior Court decisions have rejected that approach and refused to apply the economic loss doctrine to UTPCPL claims.  See Hollenshead v. New Penn Financial, LLC, 447 F.Supp.3d 283, (E.D. Pa. 2020) citing  Dixon v. Nw. Mut., 146 A.3d 780, 790 (Pa. Super. Ct. 2016) (declining to find UTPCPL claims barred by the economic loss doctrine); see also Knight v. Springfield Hyundai, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to [plaintiff's] UTPCPL claims.").

The District Court in Hollenshead set forth at length the law applicable to a situation where the Court of Appeals' prediction concerning a matter of state law should no longer be followed because there is "persuasive evidence of a change in Pennsylvania law." Id. (citing Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343 (3d Cir. 1990)).  The District Court cited numerous opinions by other judges of this Court holding that the economic loss doctrine does not apply to UTPCPL claims.  See McDonough, 365 F. Supp. 3d at 560 (citing Kerr v. State Farm Mut. Auto. Ins. Co., No. 18-309, 2018 WL 5809989, at *4–5 (W.D. Pa. Nov. 6, 2018); Lovelace v. Nationwide Mut. Ins. Co., No. 18-2701, 2018 WL 3818911, at *3–4 (E.D. Pa. Aug. 10, 2018); Pansini v. Trane, No. 17-3948, 2018 WL 1172461, at *5–6 (E.D. Pa. Mar. 6, 2018); Busch v. Domb, No. 17-2012, 2017 WL 6525779, at *3–4 (E.D. Pa. Dec. 20, 2017); Landau v. Viridian Energy PA LLC, 223 F. Supp. 3d 401, 415 (E.D. Pa. 2016); Sosso v. ESB Bank, No. 16-367, 2016 WL 3855031, at *7 (W.D. Pa. July 15, 2016); Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *6–7 (W.D. Pa. June 15, 2015)).

Plaintiff submits that this Court should follow the reasoning in <u>Hollenshead</u> and rule that the economic loss doctrine is wholly inapplicable to claims under the UTPCPL.

Finally, under Pennsylvania law, it is inappropriate to rule on an economic loss doctrine defense at the motion to dismiss stage, before discovery has taken place. <u>Grode v. Mutual Fire, Marine and Inland Ins. Co.</u>, 623 A.2d 933, 936-37 (Pa. Cmwlth 1993) (overruling preliminary objections).

### E. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE GIST OF THE ACTION DOCTRINE

The Pennsylvania gist of the action doctrine does not bar a claim of fraudulent inducement to enter the contract. <u>Mirizio v. Joseph</u>, 4 A.3d 1073, 1085 (Pa. Super 2010); <u>Sullivan v. Chartwell Inv. Partners, L.P.</u>, 873 A.2d 710, 719 (Pa. Super. 2005). There is no gist of the action doctrine under New York law. Since Plaintiff has stated a claim for fraudulent inducement, Defendant's motion based on the gist of the action doctrine should be denied.

### F. PLAINTIFF HAS PLEADED FRAUD WITH SUFFICIENT SPECIFICITY

Plaintiff's Complaint alleges fraudulent statements made <u>in writing</u> on <u>Defendant's own website and proposed contract.</u> "Where, as here, a complaint alleges that specific, identifiable written materials concededly disseminated by a defendant contain misrepresentations upon which Plaintiffs relied, the Rule 9(b) pleading requirements concerning identification of the allegedly fraudulent statements, and specification of their time, place and speaker, are satisfied." <u>ABF Capital Management v. Askin Capital Management, LP</u>, 957 F.Supp. 1308, 1326 (S.D. N.Y. 1997) (citing <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1129 (2d Cir. 1994) ( reliance on press releases and publicly filed corporate documents satisfies Rule 9(b) particularity requirements). When such written, easily identifiable statements are relied upon by a plaintiff, a defendant cannot plausibly

13

complain that he does not have sufficient notice of the time, place and speaker to prepare an adequate defense.

Defendant relies on a case where a group of corporate managers were sued, and the court required plaintiff to distinguish among the various natural person defendants when alleging spoken word fraudulent statements. See Klein v. General Nutrition Co. 186 F.3d 338 (3d Cir. 1999). In other words, the Court of Appeals rejected group pleading against all natural person defendants. Defendant has cited no authority for the proposition that a corporation is not responsible for the statements in its own documents, or by its own employees answering the telephone at the business, unless the plaintiff can show which individual corporate employee was responsible for the statement. That is not required by Rule 9(b).

Likewise, Granite State Ins. Co. v. UJEX, Inc. is not on point. In that case, the complaint made vague allegations of "some falsely deflated employment figures, some falsely deflated payroll figures, and some false classification codes, without further details." 2005 WL 1618792, *8 (D. N.J. Jul. 11, 2005). The problem with Granite State's complaint was a lack of pleading of the content of the alleged fraudulent statements. In this case, Plaintiff has alleged the precise content of the fraudulent statements.

Courts have required additional specificity where a complaint makes vague assertions of spoken omissions or misrepresentations without specifying which agent of Defendant made them, what specifically was said, or where or when. But in this case, the statements are in writing, and are quoted verbatim from Defendant's own website and in the contract it tendered to Plaintiff, which is attached to the Complaint. To the extent that the alleged fraudulent statements were oral, the conversations are described in detail in Paragraph 11 of the Complaint, including the date, the exact statements, and a sufficient descriptor of the

speaker that Defendant should be able to identify which of its agents made the statements -- the woman charged with establishing or communicating to Capped Price customers Defendant's "prevailing retail price." Defendant knows better than Plaintiff who that person is, and Plaintiff expects to learn the speaker's identity in discovery. "[W]hen details of the fraud itself are within the defendant's exclusive knowledge, specific requirements are less stringent." Goldberg v. Rush University Med. Center, 929 F.Supp.2d 807, 814-15 (N.D. Ill. 2013).

Defendant has been fully apprised of the precise misconduct with which it has been charged and its motion for more particularity should be denied.

### G. PLAINTIFF HAS STANDING TO ASSERT CLAIMS ON BEHALF OF UNNAMED CLASS MEMBERS UNDER THE LAWS OF NEW YORK AND THEIR STATES OF RESIDENCE

Defendant contends that Plaintiff's claims under the consumer protection laws of other states fail because Plaintiff lacks standing. This argument betrays a fundamental lack of understanding of class actions. Plaintiff has standing in his own right to bring his claims under Pennsylvania and New York law. Plaintiff's claim under the New York consumer protection law is valid because Defendant's principal place of business is in New York, and therefore it is bound to comply with New York law, regardless of where its customers live. See Danganan v. Guardian Protection Services, 645 Pa. 181, 179 A.3d 9 (2018) (residents of other states may bring claims under Pa. UTPCPL against Pennsylvania-based business, analyzing similar statutory language authorizing all persons to sue, as opposed to all residents of this state).

With regard to the laws of other states where the unnamed class members live, those unnamed class members have standing to sue Defendant under their own state's laws. Plaintiff is not suing on his own behalf under the laws of other states, but rather as a class representative pursuant to the Rules of Civil Procedure. Class actions are an exception to the

general rule that one person cannot litigate injuries on behalf of another. Langan v. Johnson & Johnson Consumer Companies, Inc., 897 F.3d 88, 93 (2d Cir. 2018) (Connecticut resident has standing to bring class action on behalf of residents of twenty other states under those states' consumer protection laws); see also In re Generic Pharmaceuticals Pricing Antitrust Litigation, 368 F.Supp.3d 831. "Although a named class action plaintiff has not actually suffered the injuries suffered by her putative class members (and therefore would not normally have standing to bring those suits), Congress has said that the fact that the parties "possess the same interest" and "suffer[ed] the same injury" gives the named plaintiff a sufficient stake in the outcome of her putative class members' cases." Langan v. Johnson & Johnson Consumer Companies, Inc., 897 F.3d at 93; citing Wal-Mart Stores v. Dukes, 564 U.S. 338, 348–49, 131 S.Ct. 2541 (2011).

With regard to Defendant's argument that the Court should dismiss the claims of the unnamed class members who reside in Massachusetts, based on that state's notice requirement, Plaintiff submits that this motion is premature. Plaintiff seeks to bring these claims as an opt-in class. Any question about an individual Massachusetts resident's failure to give proper notice is better litigated at the stage of litigation where that person attempts to opt in to this action.

Accordingly, the Court should deny Defendant's Motion to Dismiss on standing grounds.

## H.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant contends that Plaintiff's claims are time-barred. Plaintiff brought this action within less than sixty days of the events giving rise to his claim, and his claims are obviously timely. The statute of limitations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law is six years, and that time limitation is incorporated into the class

definition alleged in the Complaint.  Gabriel v. O'Hara, 534 A.2d 488 (Pa. Super. 1987).

Likewise, the New York statutes of limitations for breach of contract and fraud are six years.

CPLR §§ 213(2), 213(8).

 To the extent that Defendant seeks to litigate the proper contours of the classes

Plaintiff seeks to represent, that is not an appropriate subject for a Rule 12(b)(6) Motion to

Dismiss.  Rather, the topic should be addressed at the time of class certification and/or summary

judgment motions.

 I.   PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD NOT BE
      STRICKEN

 Defendant does not dispute that Pennsylvania law recognizes that plaintiffs may

seek punitive damages for fraud.  Defendant moves that Plaintiff's claim for punitive damages be

stricken based on an exculpatory, limitation of liability clause in the contract.  This assertion fails

for multiple reasons.  First, the law does not permit enforcement of an exculpatory clause where

the Defendant has committed fraudulent inducement to enter into the contract.  See Wartsila NSD

North America Inc. v. Hill International, Inc., 2000 WL 36740987 (Sept. 29, 2000 D. N.J.).

 Second, Pennsylvania law bars enforcement of this exculpatory clause for the

following reasons.  Under Pennsylvania law, although exculpatory provisions are generally

disfavored, such provisions are enforceable where three conditions are met. First, the clause must

not contravene public policy. Second, the contract must be between persons concerning their

private affairs. Third, each party must be a free bargaining agent so the contract is not one of

adhesion.  Tayar v. Camelback Ski Corp., 616 Pa. 385, 399, 43 A.3d 1190, 1199 (2012).  The

exculpatory clause Defendant seeks to enforce in this action fails for two reasons:  it is against

public policy and it is in a contract of adhesion.

17

In Tayar, the Pennsylvania Supreme Court recognized that public policy bars enforcement of an exculpatory clause to deny liability for intentional or reckless tortious conduct. 616 Pa. 401, 43 A.3d 1200. In this case, Defendant is attempting to exempt itself from the consequences of its intentional tort, fraud, by asserting a contractual exculpatory clause. Defendant's Motion should be denied under Tayar.

"Generally, an adhesion contract is a "standardized contract form offered to consumers of goods and services on [an] essentially 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing [to the] form contract." Todd Heller Inc. v. United Parcel Service, Inc., 754 A.2d 689, 700 (Pa. Super. 2000), citing Denlinger, Inc. v. Dendler, 415 Pa.Super. 164, 608 A.2d 1061, 1066 (1992) quoting Black's Law Dictionary (5th.Ed.1979). The fundamental nature of this type of contract is such that the consumer who is presented with it has no choice but to either accept the terms of the document as they are written or reject the transaction entirely. Todd Heller Inc. v. United Parcel Service, Inc., 754 A.2d at 700, citing Leidy v. Deseret Enterprises Inc., 252 Pa.Super. 162, 381 A.2d 164, 167 (1977).

The contract at issue in this case was presented to Plaintiff as a "take it or leave it" basis, with no realistic opportunity to bargain. It is an adhesion contract, and therefore under Tayar, the limitation of liability clause should not be enforced.

18

IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.


Respectfully submitted,


Date: _9/8/2020_____              BY: __s/M. Frances Ryan_____
                                           M. Frances Ryan
                                           I.D. No. 62060
                                           Validation of Signature Code MFR1130
                                           Edward C. Sweeney
                                           I.D. No. 64565
                                           Attorneys for Plaintiff
                                           Wusinich & Sweeney, LLC
                                           211 Welsh Pool Road, Suite 236
                                           Exton, PA  19341
                                           610-594-1600
                                           Email:  mfrancesryan@wusinichsweeney.com

# EXHIBIT A

# WUSINICH & SWEENEY, LLC

ATTORNEYS AND COUNSELLORS AT LAW

EDWARD C. SWEENEY

JOSEPH F. WUSINICH, III†
(of counsel)

211 WELSH POOL ROAD
SUITE 236
EXTON, PA  19341

†LL.M. IN TRIAL ADVOCACY

(610) 594-1600
Fax: (610) 594-6518

esweeney@wspalaw.com

July 7, 2020

**SENT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

HOP Energy, LLC
4 West Red Oak Lane, Suite 310
White Plains, NY  10604

      RE:  Brian Callery v. HOP Energy, LLC and DDM Energy
           Chester County CCP No. 2020-03904-CT

Dear Sir/Madam:

      Enclosed please find a Complaint which has been filed in the above-captioned matter naming your company as a Defendant.  Please refer this matter to your attorney or your insurance company immediately.  An Answer to the Complaint is required within 20 days after your receipt of the Complaint. Otherwise, default judgment may be taken against your company.

      Also enclosed is an Acceptance of Service of Complaint.  Please have the appropriate party sign and date the same and return it to me in the enclosed envelope.

      Thank you for your immediate attention to this matter.

                       Very truly yours,

                       Edward C. Sweeney

ECS:lo
Enclosure