IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN CALLERY,<br><br>                                 **Plaintiff,**<br><br>     v.<br><br>HOP ENERGY, LLC,<br><br>                                 **Defendant.** | CIVIL ACTION NO. 20-3652 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                    March 24, 2021

      Plaintiff Brian Callery filed this proposed class action lawsuit against Defendant HOP Energy, LLC ("HOP"), in the Chester County, Pennsylvania Court of Common Pleas.[1] Defendant removed the case, invoking jurisdiction through the Class Action Fairness Act of 2005 ("CAFA").[2] Plaintiff Callery has moved to remand the case to state court, contending that CAFA does not apply.[3]

**I.    BACKGROUND**

      The Complaint alleges the following facts. HOP provides residential and commercial heating oil and related services to customers in eight states.[4] HOP offers variable, fixed, and capped pricing programs for its full-service customers receiving automatic delivery.[5] The prices

---

[1] Compl. [Doc. No. 1-1].

[2] Notice of Removal [Doc. No. 1] at 1.

[3] Pl.'s Mot. to Remand [Doc. No. 5].

[4] Compl. ¶ 3.

[5] *Id.* at ¶ 6.

under the variable price program are based upon the prevailing retail price of oil, and increase or decrease as market conditions fluctuate. The fixed price program provides customers with heating oil at a fixed price over the course of a one-year period.[6] Under the capped price program, a customer cannot be charged more than a set maximum price but pays the lower "prevailing retail price" if the price of the oil drops below the maximum price.[7]

On April 2, 2020, Plaintiff entered into a retail heating oil delivery and services agreement with HOP providing for the "automatic delivery" of heating oil to his home.[8] This contract was established under HOP's capped price program.[9] HOP agreed to provide up to one thousand gallons of heating oil to Plaintiff at a price not to exceed $2.099/gallon, plus applicable taxes.[10] Plaintiff contends he purchased this plan with the understanding that if the prevailing retail price for oil went below $2.099/gallon, he would be charged the lower amount.[11]

On May 19, 2020, Plaintiff received his first delivery of 54 gallons of heating oil at the capped rate of $2.099/gallon.[12] Plaintiff claims he immediately called a HOP representative to ask what the current prevailing retail price for oil was at that time.[13] Plaintiff avers that the first HOP employee he spoke to said it was $1.55/gallon before a different representative later told him it was $2.49/gallon.[14] This interaction led Plaintiff to believe that HOP did not intend to

---

[6] *Id.*
[7] *Id.* at ¶ 9.
[8] *Id.* at ¶¶ 8–9.
[9] *Id.* at ¶ 9.
[10] *Id.*
[11] *Id.*
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.*

honor its capped price promise and instead would provide a fake prevailing retail price to customers.[15]

Plaintiff filed suit in state court asserting claims for breach of contract, breach of covenant of good faith and fair dealing, common law fraud, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and violation of the consumer protection statutes of the relevant states.[16]

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court where the claims could have originally been brought in federal court.[17] A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court, and a motion to remand may be filed at any time before final judgment is entered.[18] If the district court lacks subject matter jurisdiction, it must remand to the state court from which the action was removed.[19] The party asserting jurisdiction bears the burden of proving that the matter is properly before the federal court.[20]

## III. DISCUSSION

"CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated

---

[15] *Id.* at ¶¶ 12–13.

[16] *Id.* at ¶¶ 31–57.

[17] *See* 28 U.S.C. § 1441(a).

[18] *See id.* § 1447(c).

[19] *Id.*

[20] *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members."[21] "In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal."[22] A court determines which of the two established tests should be used in a CAFA removal action by looking to the nature of the jurisdictional facts alleged and whether they are in dispute.[23] In such cases where the evidence presented is insufficient to meet the removing party's burden of proof, courts are instructed to either remand the case to state court or order further jurisdictional proceedings.[24]

As an initial matter, Plaintiff's complaint is indeterminate regarding the amount in controversy which places this requirement in dispute. The Complaint provides information relating to Plaintiff's own individual out-of-pocket loss, but does not explicitly allege the total class damages or the damages suffered by other individual class members.[25] Plaintiff's complaint

---

[21] *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6); *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1347 (2013)). The Parties do not dispute that minimal diversity exists and the class size will exceed 100 people. Therefore, only the amount in controversy requirement is at issue here.

[22] *Judon*, 773 F.3d at 500 (citing *Frederico*, 507 F.3d at 197 and *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006)).

[23] The Third Circuit has established two tests that apply depending on whether the jurisdictional facts are disputed in a CAFA removal action. *Judon*, 773 F.3d at 504–05. The preponderance of the evidence test applies where "a challenge to the amount in controversy had been raised in the pleadings or the notice of removal, 'but no evidence or findings in the trial court addressed that issue.'" *Id.* at 504. The legal certainty test applies "where the jurisdictional facts are not contested and the amount in controversy is 'determined in whole or in part' by applicable law." *Id.* at 505.

[24] *Id.* at 508–09; *see also Smith v. HSN, Inc.*, No. 20-12869, 2020 WL 7022640, at *7 (D.N.J. Nov. 30, 2020) (quoting *Lee v. Cent. Parking Corp.*, No. 15-0454, 2015 WL 4510128, at *1 (D.N.J. July 24, 2015)) (concluding that when the amount in controversy element under CAFA is in dispute, courts may "resort[] to the fallback principle that jurisdictional discovery should be permitted where a claim of jurisdiction is not 'clearly frivolous.'").

[25] The Complaint alleges a $30 individual out-of-pocket loss and the *ad dannum* clauses in the complaint seek an amount in excess of $50,000 on behalf of the entire class.

therefore sheds "no light upon [the] subject of the total amount in controversy."[26] Because the jurisdictional facts are disputed, a "challenge to the amount in controversy [is] raised" in Plaintiff's motion to remand, and "no evidence or findings in the trial court" have addressed the issue, Defendants, as the party alleging jurisdiction, must justify its "allegations by a preponderance of the evidence."[27]

To meet this burden, Defendant estimated the potential alleged amount in controversy by taking Plaintiff's claimed out-of-pocket loss of $30 and applying that amount to each putative class member. Defendant states that between January 1, 2016 and May 31, 2020, it delivered heating oil under the capped price program to approximately 31,254 customers.[28] Defendant assumes that every single one of these estimated 31,254 customers suffered on average the $30 baseline loss, and then add statutory, compensatory, and punitive damages available in each state; treble damages where available; and 30% attorneys' fees. Under this calculation, Defendant estimates the total amount in controversy as $5,494,920.[29]

Defendant's estimate requires accepting a key assumption not alleged in the Complaint—that each customer incurred the same out-of-pocket loss despite potentially different capped

---

[26] *Judon,* 773 F.3d at 506.

[27] *Id.* at 506–07; *see also Samuel-Bassett*, 357 F.3d 392, 397 (3d Cir. 2004); *McNutt v. General Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 179–80 (1936). Because Plaintiff did not explicitly limit the amount in controversy to less than $5,000,000, the framework set out under *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006) is inapplicable. *Frederico,* 507 F.3d at 196–97.

[28] *See* Mercado Decl. Ex. A [Doc. No. 11-1] at ¶¶ 5–7. This approximation was derived from Defendant's accounts receivables database. *Id.*

[29] Def.'s Resp. to Mot. to Remand [Doc. No. 11] at 8–15. To support the 30% attorneys' fees figure, Defendant cite to *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005), which relied on a study by the Federal Judicial Center finding that the median percentage of recovery for attorneys was between 27% and 30%.

rates, different frequencies and quantities of deliveries, and fluctuating oil retail prices.[30] The lack of information contained in Defendant's notice of removal and subsequent briefing distinguishes this case from the Third Circuit's decision in *Frederico*, upon which Defendant relies. In *Frederico*, all of the potential class members were New Jersey residents who had been charged the same late rental fee, as alleged in the plaintiff's complaint.[31] The plaintiff's undisputed damages was also in an amount where a class size of just 2,233 individuals were needed to meet the $5 Million threshold. Thus, the *Frederico* court concluded that because the complaint alleged the class consisted of tens of thousands of individuals the amount in controversy requirement was easily met.[32]

Unlike *Frederico*, the damage calculation is disputed here and even when applying Plaintiff's $30 out-of-pocket loss across the entire putative class, Defendant's calculation yields a number that barely exceeds the $5 Million threshold. This case is therefore more analogous to the Third Circuit's decision in *Judon* where the court considered whether an insurer who removed a class action to federal court had proven CAFA jurisdiction.[33] The Court of Appeals rejected defendants calculation method because it used the high-end of an open amount of potential damages under the insurance plan.[34] This method was insufficient and rested too

---

[30] *See* Mercado Decl. Ex. A [Doc. No. 11-1] at ¶¶ 4–5. Defendant presents no support as to why it assumes every single customer receiving oil under its capped price program suffered a $30 loss.

[31] *Frederico*, 507 F.3d at 192.

[32] *Id.* at 198–99. In addition, other district courts within this circuit have found that the amount in controversy requirement is met when the defendant's calculation far exceeds the $5 Million threshold. *See, e.g*, *Arkliss v. Nissan Extended Serv. N. Am., Inc.*, No. 18-5681, 2018 WL 10502135, at *2–3 (D.N.J. Aug. 16, 2018) (finding the defendant met its burden of showing the amount in controversy exceeded $5 Million because the determined damages at one of the thirty-five Nissan dealers involved in this lawsuit was estimated at $2,145,829).

[33] *Judon*, 773 F.3d at 506.

[34] *Id.* at 507–08.

heavily on assumptions of the other class member's individual damages rather than provide the court with any "proof to a reasonable probability" of what amounted to a reasonable claim against the defendant.[35]

Much like the *Judon* court, Defendant's estimation rests on too many assumptions relating to other individual class members potential out-of-pocket losses to conclude CAFA jurisdiction exists. Defendant could have supported its calculation by including essential information such as the variability of the retail oil prices across the states during the alleged class period, and the potential variance in quantities and frequencies of oil deliveries by different customers. Defendant instead calculated the potential amount in controversy using a method that included the highest possible number of alleged class members without providing any "proof to a reasonable probability" of how that number is representative. Defendant's estimation also incorporates the high-end range for attorneys' fees and assumes recover for both statutory and treble damages. Even when assuming these high-end recover amounts in its calculation, the estimated amount in controversy is essentially right at the $5 Million threshold.[36]

When applying the preponderance of the evidence standard, the removing party's assumptions "must be grounded on some reasonable inference that can be drawn from fact."[37] At this time, Defendant has not yet produced the underlying data to support its estimated damages, to which Plaintiff does not have access. Defendant has therefore not established the amount in controversy requirement under CAFA. However, the Court concludes that further jurisdictional

---

[35] *Id.* at 499, 508.

[36] *See Id.* at 507. The fact that Defendant used the high-end range of potential class members, the high-end range for attorneys' fees, and incorporated both statutory and treble damages into its calculation while only yielding an amount in controversy that is $400 over the jurisdictional limit weighs against finding jurisdiction under CAFA.

[37] *Id.*

proceedings may provide the necessary information needed for the Court to make a final determination on whether jurisdiction under CAFA exists.

As the Third Circuit has stated, the district courts have "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,"[38] and other courts assessing whether the CAFA amount in controversy is satisfied have ordered limited discovery on the issue.[39] That approach is appropriate here, where Defendant has access to evidence that can establish the number of potential class members and their respective losses. This additional discovery will also promote judicial economy because the "facts relevant to jurisdiction are also central to class certification and the merits of the claims."[40]

## IV.   CONCLUSION

For the reasons discussed above, Plaintiff's motion to remand will be dismissed without prejudice until after further jurisdictional discovery is completed. An order will be entered.

---

[38] *Judon*, 773 F.3d at 509 (citing *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995)).

[39] *Compare Id.* at 508–09 (remanding the case to the district court for additional jurisdictional discovery because the calculation method of defendant left the court with no evidence of what a reasonable claim against defendant might be); *Smith*, 2020 WL 7022640, at *7 (finding that when there is a "significant range in the possible damages for a CAFA claim," additional evidence would allow the court to "make a more grounded estimate of that claim, instead of arbitrarily picking the high-end or low-end, an approach discouraged by *Judon*"); *Ciccone v. Progressive Specialty Ins. Co.*, No. 20-981, 2020 WL 7319777, at *6 (M.D. Pa. Dec. 11, 2020) (concluding *Judon* instructs the district courts to engage in jurisdictional discovery when the defendant's present insufficient information to find by a preponderance of the evidence that the amount in controversy exceeds the minimum jurisdictional threshold of $5 Million); *with Arkliss*, 2018 WL 10502135, at *3 (finding defendant sufficiently showed by a preponderance of the evidence that the amount in controversy was met by calculating a potential amount in controversy of over $70 Million).

[40] *Smith*, 2020 WL 7022640, at *7.