\

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIAN CALLERY,**     **Plaintiff,**     v.   **HOP ENERGY, LLC,**     **Defendant.** | **CIVIL ACTION NO. 20-3652** |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                         August 8, 2022

Following a limited period of discovery focused on jurisdictional issues, Plaintiff has filed a second motion to remand this case to the Court of Common Pleas of Chester County, Pennsylvania. In particular, Plaintiff alleges that Defendant has not sustained its burden of showing that the amount in controversy meets the $5 million threshold for federal jurisdiction under the Class Action Fairness Act ("CAFA"). Defendant opposes this motion. For the reasons set forth herein, Plaintiff's motion will be denied.

**I.      Background**

The Court assumes the parties' familiarity with the background of this case, which is more fully set forth in the Court's Memorandum Opinion of March 24, 2021,[1] and so limits its summary to the facts relevant to this memorandum. Defendant HOP Energy ("HOP") sells residential heating oil to customers in eight states.[2] Defendant offers several pricing plans, including the Capped pricing program (the "Capped Program").[3] Under the Capped Program, if

---

[1] *See* Mem. Op. March 24, 2021 [Doc. No. 24] at 1–3.

[2] Defendant sells oil to customers in Pennsylvania, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware, and New York. Compl. [Doc. No. 1-1] ¶ 3. Defendant also sells oil to thirty-five customers in New Hampshire, but Plaintiff does not include these customers in his Complaint. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[3] Compl. [Doc. No. 1-1] ¶ 6.

1

\

the prevailing retail price for heating oil drops below the capped price, customers pay only the prevailing retail price for the oil.[4] If the prevailing retail price rises above the capped price, customers pay only the capped price.[5] On June 22, 2020, Plaintiff Brian Callery filed a Complaint in the Court of Common Pleas of Chester County, Pennsylvania, alleging that Defendant "engaged in a scheme where they created a false, inflated prevailing retail price which they quoted to customers [in the Capped Program] instead of the actual prevailing retail price."[6]

On July 28, 2021, Defendant removed the case to this Court, invoking jurisdiction under the Class Action Fairness Act ("CAFA").[7] Plaintiff moved to remand, contending that the amount in controversy requirement was not satisfied.[8] The Court dismissed Plaintiff's motion without prejudice and ordered limited "jurisdictional discovery directed at the Class Action Fairness Act's amount in controversy requirement."[9] Following jurisdictional discovery, Plaintiff filed a second motion to remand.[10]

---

[4] Compl. [Doc. No. 1-1] ¶ 9.

[5] Compl. [Doc. No. 1-1] ¶ 6.

[6] Compl. [Doc. No. 1-1] ¶ 12.

[7] Not. Removal [Doc. No. 1] at ECF pages 1, 4.

[8] *See* Pl.'s Mot. Remand [Doc. No. 5].

[9] Order March 24, 2021 [Doc. No. 25].

Under the direction of Judge James Giles, who was appointed by the Court as Special Discovery Master, Defendant designated David Mercado, Chief Financial Officer of HOP, as its Rule 30(b)(6) witness. Order by Agreement May 17, 2021 [Doc. No. 31] at 1–2; Pl.'s Second Mot. Remand [Doc. No. 37] at ECF pages 15–23 (transcript of first day of depositions); Pl.'s Second Mot. Remand Ex. B [Doc. No. 37-1] at ECF pages 2–20 (transcript of second day of depositions). Defendant also responded to requests for document production and written interrogatories. Pl.'s Second Mot. Remand Ex. B [Doc. No. 37-1] at ECF pages 22–48.

[10] Pl.'s Second Mot. Remand [Doc. No. 37].

\

## II.     Legal Standard

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court where the claims could have originally been brought in federal court.[11] A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court, and a motion to remand may be filed at any time before final judgment is entered.[12] If the district court lacks subject matter jurisdiction, it must remand to the state court from which the action was removed.[13] The party asserting jurisdiction bears the burden of proving that the matter is properly before the federal court.[14] Where "a challenge to the amount in controversy ha[s] been raised in the pleadings or the notice of removal, 'but no evidence or findings in the trial court address[] that issue,' the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence."[15]

"CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members."[16] "In order to determine whether the CAFA jurisdictional requirements

---

[11] *See* 28 U.S.C. § 1441(a).

[12] *See* 28 U.S.C. § 1447(c).

[13] *Id.*

[14] *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

[15] *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 504 (3d Cir. 2014) (quoting first *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 397 (3d Cir. 2004), then *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

[16] *Judon*, 773 F.3d at 500 (citing 28 U.S.C. § 1332(d)(2), (5)(b), (6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590 (2013)). The parties do not dispute that minimal diversity exists and the class size will exceed 100 people. Therefore, only the amount in controversy requirement is at issue here.

\

are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal."[17]

### III.   Discussion

Plaintiff's second motion to remand, like Plaintiff's first motion, alleges that Defendant has not met its burden to invoke federal jurisdiction under CAFA. Plaintiff argues that Defendant has not shown, by a preponderance of the evidence, that the dispute satisfies the $5 million CAFA "amount in controversy" requirement.[18] Plaintiff asserts that Defendant has inflated the size of the putative class by presuming that "*every single one* of Defendant's [Capped Program] customers has been overcharged for heating oil."[19]

Plaintiff argues that Defendant cannot assume that every Capped Program customer is a potential class member. Instead, Plaintiff claims that Defendant must determine who, if anyone, was overcharged and limit its calculation of the amount in controversy to those customers.[20] Because Defendant has refused to produce the prices it charged *non-capped* customers, Plaintiff contends that "the Court should infer that the evidence would not support Defendant's argument."[21] However, no answer has been filed in this case, and Defendant has not admitted liability on any point.[22] Moreover, the pricing term at issue—"our prevailing retail price"[23]—is

---

[17] *Judon*, 773 F.3d at 500 (citations omitted).

[18] Pl.'s Second Mot. Remand [Doc. No. 37] at 1.

[19] Pl.'s Reply Mem. Supp. Mot. Remand [Doc. No. 40] at 1 (emphasis original).

[20] Pl.'s Reply Mem. Supp. Mot. Remand [Doc. No. 40] at 1–2.

[21] Pl.'s Reply Mem. Supp. Mot. Remand [Doc. No. 40] at 1–2; Pl.'s Second Mot. Remand [Doc. No. 37] at ECF pages 12–13.

[22] *See* Def.'s Opp'n Pl.'s Mot. Remand [Doc. No. 38] at 1 (asserting that Defendant concedes "no liability to [Plaintiff] or any member of the putative class," but calculating damages based on the "assum[ption] that Plaintiff's claims are viable.").

[23] Compl. [Doc. No. 1-1] at ECF page 20.

\

not defined in the Capped Program contract, and the relationship between this price and the price charged to non-capped customers may be subject to dispute between the parties. Requiring Defendant to identify with particularity class members who it harmed is tantamount to requiring Defendant to concede liability. Defendant does not need to concede liability to establish federal jurisdiction.[24] Instead, the Court must look to the substance of Plaintiff's Complaint as filed, and to the class that Plaintiff alleges.[25]

Plaintiff alleges that Defendant committed intentional fraud in pricing oil deliveries to Capped Program customers,[26] and asserts his claims on behalf of a class consisting of "[a]ll persons who entered into contracts with Defendants for the delivery of heating oil to a residence, under terms including a capped pricing program and/or a prevailing retail price for the price of the heating oil, and who received delivery of the heating oil during the time period commencing six years before the filing date of this action."[27] Thus, Plaintiff alleges that *every capped customer* who received oil between 2014 and 2020 is a member of the class of victims subject to Defendant's intentional fraud.[28] Accordingly, the Court must assume that "every single [capped customer] has been overcharged for heating oil."[29] While the class may eventually be narrowed,

---

[24] *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (holding that a defendant "need not concede liability" to establish the amount in controversy for the purposes of CAFA jurisdiction). In *Lewis*, the Ninth Circuit reversed a district court's remand of a case brought under CAFA where the district court, without evidence, assumed that some portion of the pled class had not suffered fraudulent charges and asked the removing Defendant to substantiate its claim of jurisdiction by identifying specific unauthorized charges. *Id*. at 399–401. *See also Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (the amount in controversy "is a pleading requirement, not a demand for proof.").

[25] *Knowles*, 568 U.S. at 593 (citing *Wis. Dept. of Corr. v. Schact*, 524 U.S. 381, 390 (1998)).

[26] Compl. [Doc. No. 1-1] ¶¶ 12–14.

[27] Compl. [Doc. No. 1-1] ¶ 15.

[28] Compl. [Doc. No. 1-1] ¶ 15.

[29] Pl.'s Reply Mem. Supp. Mot. Remand [Doc. No. 40] at 1.

\

federal jurisdiction is based on a plaintiff's initial filing, not on "contingent future events."[30] Given the scope of Plaintiff's allegations, at this stage of litigation it is proper to calculate the amount in controversy based on the entire class Plaintiff alleges.[31]

Based on that class, Defendant has shown, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million CAFA requirement. 24,070 potential class members—out of a potential class of 64,008[32]—reside in states with consumer protection statutes that provide for statutory minimum damages: Pennsylvania,[33] New York,[34]

---

[30] *Knowles*, 568 U.S. at 593; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) ("[e]vents occurring subsequent to removal which reduce the amount recoverable . . . do not oust jurisdiction."); *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.*, 605 F.2d 119, 123 (3d Cir. 1979) ("the nature of plaintiffs' claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed.").

[31] While Defendant offers three separate computations, only Defendant's second calculation is viable. Defendant's first calculation is untenable, as it involves trebling the statutory minimums in Pennsylvania and New York. This is not permitted under those states' consumer protection statutes. Defendant's third calculation, which attempts to estimate "amounts saved" by customers, is irrelevant to the jurisdictional inquiry. Plaintiff is claiming damages for breach of contract, not for a fraudulent benefit.

[32] The Court's previous Opinion referenced data from 2016 through 2020. Following limited discovery, this Order now relies on data spanning from 2014 to 2020, the period in which Plaintiff alleges that Defendant committed fraud. Compl. [Doc. No. 1-1] ¶ 15; *see also* Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

In addition, the calculations in this Order, and in Defendant's briefing, are based on the number of customers who received shipments of oil during the relevant period and were charged a price below the capped price. *See* Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27. However, as Defendant correctly notes, this "analysis understates rather than overstates the amount in controversy," because Plaintiff's claims may well encompass customers who were wrongfully charged the capped price when the true "prevailing retail price" was below the cap. *See* Def.'s Sur-Reply [Doc. No. 41] at 3 n2.

[33] Pennsylvania's Unfair Trade Practices and Consumer Protection Law authorizes $100 in statutory minimum damages. 73 P.S. § 201-9.2(a). (9,056 potential class members) * ($100) = $905,600. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[34] New York's General Business Law authorizes $50 in statutory minimum damages. N.Y. Gen. Bus. Law § 349(h). (2,468 potential class members) * ($50) = $123,400. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

\

Massachusetts,[35] and Rhode Island.[36] Assuming that each member of the potential class suffered at least *some* damages, and assuming that attorney's fees may exceed 20%,[37] the amount in controversy with respect to consumers in these states exceeds $2.8 million.[38]

The remaining 39,973 potential class members reside in states without applicable statutory damages: New Jersey,[39] Connecticut,[40] Delaware,[41] and Vermont.[42] Plaintiff

---

[35] Massachusetts' Consumer Protection Law authorizes $25 in statutory minimum damages, and allows the statutory minimum to be trebled "if a court finds that the…[defendant's] practice was a willful or knowing violation." Mass. Gen. Laws Ann. Ch. 93A § 9. Given Plaintiff's allegations of intentional fraud, it is proper to consider the availability of trebled statutory damages. *See Baker v. Equity Residential Mgmt., L.L.C.*, 996 F. Supp. 2d 1, 7 (D. Mass. 2014) (trebling damages under Massachusetts law for the purpose of calculating the amount in controversy under CAFA). (11,831 potential class members) * ($25) * (3) = $887,325. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[36] Rhode Island's Deceptive Trade Practices Law, at the time Plaintiff's Complaint was filed, authorized $200 in statutory minimum damages. R.I. Gen. Laws § 6-13.1-5.2(a) (2021). Additionally, a court had discretion to order punitive damages. Given Plaintiff's allegations of intentional fraud, it is reasonable to consider punitive damages in calculating the amount in controversy. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943) ("When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied.")). (715 potential class members) * ($200) * (3) = $429,000. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[37] Neither party disputes the availability of attorneys' fees under the relevant consumer protection statutes. *See also, e.g.*, 73 P.S. § 201-9.2(a) ("The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees."); Mass. Gen. Laws Ann. Ch. 93A § 9(4) ("If the court finds a violation…the petitioner shall…be awarded reasonable attorney's fees and costs incurred in connection with said action."). The court applies a 20% attorneys' fee for its calculation.

[38] The amount in controversy for states with applicable statutory damages, inclusive of a 20% award of attorney's fees, is $2,814,390. *See supra* notes 33–37 and accompanying text.

[39] New Jersey's Consumer Protection Act provides for trebled actual damages. N.J. Stat. Ann. § 56:8-19. (2,427 potential class members) * ($30) * (3) = $218,430. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[40] Connecticut's Unfair Trade Practices Act provides for punitive damages in addition to actual damages. C.G.S.A § 42-110g(a); *see also Ulbrich v. Groth*, 78 A.3d 76, 127–28 (2013) (upholding an award of both compensatory damages and punitive damages three times the value of the compensatory damages). (32,537 potential class members) * ($30) * (4) = $3,904,440. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[41] Under Delaware's Deceptive Trade Practices Act, "[i]f damages are awarded to the aggrieved party under the common law or other statutes…such damages awarded shall be treble the amount of the actual damages proved." 6. Del. C. §2533(c). (2,835 potential class members) * ($30) * (3) = $255,150. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

[42] Vermont's Consumer Protection Act allows consumers to recover the value of consideration given to a violator, in addition to exemplary damages up to three times the value of that consideration. 9 V.S.A. § 2461(b). Without information as to the actual amount of consideration paid in Vermont, the Court applies the claimed "typical" $30 damages for the purposes of this calculation. This is likely an underestimation of the potential Vermont damages. (2,139 potential class members) * ($30) * (4) = $256,680. Pl.'s Second Mot. Remand [Doc. No. 37] at ECF page 27.

\

acknowledges that his claimed damages ($30) are typical of the class, and that Defendant should base calculations of alleged loss on this amount.[43] Moreover, given Plaintiff's allegations of intentional fraud, it is reasonable to consider punitive damages in calculating the amount in controversy.[44] Assuming that each member of the potential class suffered $30 in out-of-pocket damages, and assuming that attorney's fees may exceed 20%,[45] the amount in controversy with respect to consumers in these states exceeds $5.5 million.[46]

## IV.     Conclusion

Given the broad class that Plaintiff alleges, the availability of minimum statutory damages in several states, and the potential award of punitive damages, the amount in controversy exceeds $8 million.[47] CAFA jurisdiction is satisfied. While Plaintiff now claims that the actual putative class is smaller than the class that he asserted in his Complaint, a court's jurisdiction under CAFA is based on the amount in controversy as pled in state court.[48] An order will be entered.

---

[43] Pl.'s Second Mot. Remand [Doc. No. 37] at 6.

[44] *See Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, 2022 WL 2297292, at *8 (quoting *Staehle v. Michael's Garage, Inc.*, 35 Conn. App. 455, 463, 646 A.2d 888 (1994) ("Awarding punitive damages based on a multiple of a plaintiff's actual damages 'is a recognized method for determining punitive damages under CUTPA.'"); *see also Ulbrich*, 310 Conn. at 454 (noting that punitive damages are appropriate when, among other factors, a Defendant's behavior is "reckless, intentional, or malicious").

[45] The precise nature of the fees available under each statute varies. *See e.g.* N.J. Stat. Ann. § 56:8-19 ("In all actions under this section…the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."); C.G.S.A § 42-110g(d) ("the court may award…costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery.").

[46] The amount in controversy for states *without* applicable statutory damages, inclusive of a 20% award of attorney's fees, is $5,561,640.

[47] The Court's potential damages calculations place the total amount in controversy, inclusive of a 20% award of attorney's fees, as approximately $8,376,030. Excluding attorney's fees, the total amount in controversy is approximately $6,980,025. As previously noted, this may be an underestimation, because Plaintiff's claims may well encompass Capped Program customers who were wrongfully charged the capped price when the true "prevailing retail price" was below the cap. *See* Def's Sur-Reply [Doc. No. 41] at 3 n2.

[48] *Knowles*, 568 U.S. at 593 (citing *Schact*, 524 U.S. at 390).