**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| BRIAN CALLERY, | : | No. 2:20-cv-03652-CMR |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| HOP ENERGY, LLC, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEFENDANT HOP ENERGY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS RENEWED MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendant HOP Energy, LLC ("HOP") submits this Memorandum of Law in support of its

renewed motion (the "Motion"), pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of

Civil Procedure, to dismiss the Class Action Complaint (the "Complaint") filed by plaintiff Brian

Callery ("Callery").

I.      **PRELIMINARY STATEMENT**

In this action, Callery – a customer of HOP who claims to have been overcharged for

heating oil he purchased from HOP under a "CAPPED PRICE PROGRAM" contract – attempts

to parlay insufficient allegations about an alleged overcharge of $30 into a multi-claim, multi-state

class action.  His Complaint should be dismissed for the following reasons:

- The Complaint fails to allege enough facts to state a claim that is plausible on its face.

- His claim for breach of contract fails to allege that he satisfied a condition precedent to commencing this action.

- His claim for breach of the covenant of good faith is duplicative of his contract claim.

- His claims for common law fraud and for violation of numerous states' consumer protection statutes should be dismissed because they are not pled with particularity, as required by Rule 9(b), and for failure to state a claim.

- His common law fraud claim should be dismissed under the "economic loss doctrine" and the "gist of the action doctrine."

- His claim under N.Y. Gen. Bus. Law § 349 should be dismissed because he is not a resident of, and there was no deception or transaction in, New York.

1

- The claims he asserts on behalf of unnamed class members under the New York, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey and Delaware consumer protection statutes should be dismissed for lack of standing because he does not reside in, and did not sustain injury in, any of those states.

- Certain of his claims are, in part, time-barred.

- His request for punitive damages should be stricken because he waived punitive damages in his contract with HOP and punitive damages are not recoverable under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1-201-9.2 (the "UTPCPL").

## II.    FACTUAL BACKGROUND[1]

### A.    The Parties

Callery resides in Coatesville, Pennsylvania, which is in Chester County. (Compl. ¶ 1 (Doc. 1-1).)[2]  HOP is a Delaware limited liability company with a principal place of business in White Plains, New York.  (*Id.* ¶ 2.)  DDM Energy ("DDM") is a fictitious name for HOP.  (*Id.* ¶ 4.)

### B.    HOP's Business Structure, Pricing Programs and Contract with Callery

HOP provides residential and commercial heating oil and services to customers in Pennsylvania, New York, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey and Delaware.  (*Id.* ¶ 3.)  HOP does business in Chester County, Pennsylvania, through an office in West Chester, Pennsylvania, which the Complaint also describes as an office of DDM.  (*Id.* ¶¶ 2, 4.)  HOP offers variable, fixed, and capped pricing programs to its residential customers.  (*Id.* ¶ 6.)  This case arises out of HOP's capped pricing program.

On April, 2, 2020, Callery entered into a "Retail Credit Agreement" with HOP[3] (the "Contract"), providing for "automatic delivery" of "home heating oil" to Callery's residence in Coatesville, Pennsylvania, under which "Plaintiff would pay for ... heating oil under a Capped Price Program."  (Compl. ¶¶ 1, 2, 4, 6, 8, 9 (Doc. 1-1) & Ex. A at 1 & §§ 1-2.)  The Contract

---

[1]  For purposes of the Motion, HOP assumes that the factual allegations in the Complaint are true.
[2]  References to "Compl. ¶__" or "Compl. Ex. __" are to the Complaint (Doc. 1-1) at the indicated paragraph(s) or to the indicated exhibit to the Complaint.
[3]  The Contract refers to DDM rather than HOP.

7104141.1

provides for a "Capped Price Program" with the following pricing provision (the "Capped Pricing

Agreement"):

> You have elected our Capped Price Program, for the period from 04/02/2020 through 04/30/2021 (the "Pricing Period")[.]  [W]e will deliver up to 1000 gallons of home heating oil to you at a price not to exceed $2.099 per gallon [the "Capped Price"], plus applicable taxes.  If our [*i.e.*, HOP's] prevailing retail price for home heating oil [the "HOP Prevailing Price"] drops below the Capped Price during the Pricing Period then you will pay our prevailing retail price for home heating oil."

(Compl., Ex. A at 1.)

Thus, Callery's price is capped at no higher than $2.099/gallon, but he will pay less if the

HOP Prevailing Price drops below the "Capped Price." (*Id*.)  Callery received a "[f]irst delivery

promotional price" of $1.499/gallon on his first delivery.   The Contract states that "[h]eating oil

deliveries will be made to you on an automatic delivery basis."  (Compl., Ex. A at § 2.)

In a section entitled "**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT**

**YOUR BILL,**" the Contract provided Callery with explicit instructions on how to initiate a price

dispute if he believed his bill was incorrect:

> If you think your bill is wrong, or if you need more information about a transaction on your bill, *write us on a separate sheet* at the address listed on your bill as soon as possible.  *We must hear from you not later than sixty (60) days after we sent you the first bill on which the error or problem appeared*.  You can telephone us, *but doing so will not preserve your rights*. In your *letter*, give us the following information:  (a) Your name and account number; (b) The dollar amount of the suspected error; and (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

(Compl., Ex. A at 4) (emphasis added).  Callery does not allege, nor can he allege, that he complied

with this *required* condition precedent before proceeding with this action.

### C.   The Alleged Overcharge

After signing the Contract on April 2, 2020, Callery received his first oil fill at a "First

delivery promotional price" of $1.499/gallon.  (Compl., Ex. A at 1, 3.)  On May 19, 2020, Callery

7104141.1

received another oil fill at the Capped Price rate of $2.099/gallon for a total of $113.35.  (Compl.

¶ 10.)  After receiving that delivery, Callery telephoned HOP and asked what the HOP Prevailing

Price was (the "Telephone Call").  (Compl. ¶ 11.)  During the Telephone Call, Callery allegedly

spoke to a sales representative and was told that the HOP Prevailing Price for oil was $1.55/gallon.

(*Id.*)  Callery informed the sales representative that he was under contract, and asked why he was

charged $2.099/gallon rather than $1.55/gallon.  (*Id.*)  He was eventually transferred to another

representative who informed him that the HOP Prevailing Price for heating oil was $2.49/gallon.

(*Id.*)  When Callery questioned why he had been told that the HOP Prevailing Price was

$1.55/gallon, the second representative informed him that sales representatives did not know what

the HOP Prevailing Price was.  (*Id.*)

Based upon these scant allegations regarding this isolated Telephone Call, Callery alleges

that HOP engaged in a multi-year, multi-state scheme to intentionally overcharge "numerous

customers," including Callery, for home heating oil, and without factual support alleges that HOP

charged capped customers a "Fake Retail Price" that "bore no relation to the retail prices

Defendants or other providers in the market actually quoted or charged for heating oil," when in

fact HOP quoted him the HOP Prevailing Price.  (Compl. ¶¶ 12-16.)

### D.    The Complaint

The Complaint is styled as a putative "Class Action Complaint," purportedly filed on

behalf of a six-year class of HOP customers with contracts "for the delivery of heating oil to a

residence, under terms including a capped pricing program and/or a prevailing retail price for the

price of the heating oil…."  (Compl. ¶ 15.)[4]

---

[4]  The Complaint divides the class into two sub-classes:  (1) "those Class Members who are residents of
Pennsylvania (the 'Resident Class'); and (2) those Class Members who are not residents of Pennsylvania
(the 'Non-Resident Class')" (the members thereof, collectively, the "Class Members").  (Compl. ¶ 16.)

7104141.1

The Complaint asserts six "Counts."  Count One asserts a breach of contract claim and Count Two asserts a claim for breach of the covenant of good faith.  (Compl. ¶¶ 31-36.)  Neither claim includes any factual detail, and both incorporate the allegations in an earlier section entitled "Events Giving Rise to this Claim."  (*Id.* ¶¶ 6-14, 31-36.)  Thus, Callery's claim for breach of the covenant of good faith is based upon the very same factual allegations as his contract claim.

Count Three asserts a claim for fraud, alleging that "Defendants [*i.e.*, HOP and DDM] have made false statements of fact," including (i) statements to the public on "their website" that "under their Capped Price plan customers' heating oil price follows the market" (the "Follow the Market Representation") and that "Defendants charged competitive prices for heating oil" (the "Competitive Pricing Representation"); (ii) "the statement that Defendants would charge Plaintiff and Class Members the lesser of their Capped Rate or the prevailing market price for heating oil," without stating the time, date or means of that "statement," but apparently referring to the Capped Pricing Agreement in the Contract; and (iii) "the statement[s] [by the second representative to speak to Callery on May 19, 2020] that Defendants' prevailing market price for heating oil was $2.49/gallon … and … that Defendants' sales employees did not know the prevailing market price of heating oil" (the "Second Representative Statements").  That count also alleges that "Defendants fraudulently concealed their intention to charge Class Members far higher than prevailing market prices for heating oil" (the "Alleged Intention to Breach").  (Compl. ¶¶ 6-7, 11-14, 37-40.)

Count Four asserts a claim for violation of the UTPCPL, alleging that HOP engaged "in fraudulent and deceptive conduct which created a likelihood of confusion or of misunderstanding." (Compl. ¶¶ 41-44.)  Count Five[5] asserts a claim for violation of the N.Y. Gen. Bus. Law § 349, alleging that "Defendants have engaged in deceptive acts or practices in the conduct of their

---

[5]  The Complaint asserts six "Counts."  Due to an apparent error, they are numbered:  "Count One," "Count Two," "Count Three," "Count Four," "Count IV," and "Count V."  For ease of reference, "Count IV" in the Complaint is referred to herein as "Count Five" and "Count V" in the Complaint is referred to herein as "Count Six."

7104141.1

business." (*Id.* ¶¶ 45-47.)  Count Six asserts a "catch-all" claim alleging that HOP violated the

Non-Resident Class's (but not Callery's) consumer protection rights under the laws of Vermont,

Massachusetts, Rhode Island, Connecticut, New Jersey, and Delaware.  (*Id.* ¶¶ 48-57.)  Counts

Three through Six each seek, among other relief, compensatory and punitive damages.

## III.   ARGUMENT

### A.   All of Callery's Claims Should Be Dismissed Because the Complaint Fails to Allege "Enough Facts" to State a Claim That Is "Plausible on Its Face."

To satisfy Fed. R. Civ. P. 8(a), a complaint must plead "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at

555).  Exhibits to a complaint can be considered in deciding a motion to dismiss. *Rossman v. Fleet

Bank (R.I.) Nat'l Assoc.*, 280 F.3d 384, 388 n.4 (3d Cir. 2002).

The claims in the Complaint are based entirely upon conclusory allegations that the Follow

the Market Representation and the Competitive Pricing Representation were false or deceptive,

that HOP breached the Capped Pricing Agreement, that the Capped Pricing Agreement was false

or deceptive, that the Alleged Intention to Breach involved a false or deceptive omission, and that

the Second Representative Statements were false or deceptive.  (Compl. ¶¶ 6-14, 31-57.)  However,

the Complaint fails to allege plausible facts – such as by including an analysis comparing the prices

HOP charged Callery to (i) the prices charged by other suppliers of home heating oil or (ii) the

prices HOP charged its other customers – supporting an allegation that HOP's pricing did not

comply with the Follow the Market Representation, the Competitive Pricing Representation, or

7104141.1

the Capped Pricing Agreement.[6]  In fact, the Complaint does not plead a single fact indicating how HOP's capped prices did not "follow[] the market" or how HOP's pricing was not "competitive," define what "the market" is, or plead any facts indicating that competitors offered cheaper pricing. Callery also provides absolutely no factual support for the outrageous claim that HOP participated in a scheme to quote a "Fake Retail Price" to all of its capped customers.

Instead, Callery relies entirely on the Telephone Call. (Compl. ¶ 11.)   However, the allegations regarding this single, isolated call are wholly irrelevant to whether the Follow the Market Representation and the Competitive Pricing Representation were false or deceptive.  Those allegations also fail to include facts indicating that HOP breached, or made any misrepresentation in, the Capped Pricing Agreement, or that a claim based upon the Alleged Intention to Breach would have any basis, because the facts alleged are entirely consistent with a conclusion that the first sales representative misunderstood or was mistaken.  In addition, the Complaint fails to indicate whether the $1.55/gallon price that Callery claims to have been quoted was for the HOP Prevailing Price for home heating oil "on an automatic delivery basis," or whether the price quoted was for a promotional sales rate such as the "[f]irst delivery promotional price [of] $1.499," which Callery himself received, as referred to in his Contract.  (Compl., Ex. A at 1.)  Because the Complaint thus fails to include "enough facts" to support a "plausible" claim that the prices HOP charged Callery did not "follow[] the market" or were not "competitive," or that HOP breached the Capped Pricing Agreement, and because the Complaint cannot possibly allege reliance on or damages caused by the Second Representative Statements, the Complaint fails to state a claim for

---

[6] *See Sevugan v. Direct Energy Servs., LLC*, 2018 WL 4126568, at *5 (N.D. Ill. Aug. 29, 2018), *aff'd*, 931 F.3d 610 (7th Cir. 2019) ("the Complaint provides no factual support for the assertion that Defendant's rates were higher than those charged by other utilities and ARES and the Court will not presume such conclusory allegations are true"); *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 97, 99 (2d Cir. 2019) (granting summary judgment dismissing claims for breach of contract and covenant of good faith where contract provided that "'[t]he rate may be higher or lower each month based upon business and market conditions'" and "there [was] no evidence that [defendant's rate] was any higher than its competitors' rates").

7

breach of contract, breach of the covenant of good faith, common law fraud, or violation of any state's consumer protection laws, and all of the claims in the Complaint should be dismissed. *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

**B.     Count One, for Breach of Contract, Should Be Dismissed Because Callery Failed to Satisfy a Condition Precedent to Asserting His Claim.**

"A complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim." *Chemtech Intern., Inc., v. Chemical Injection Technologies, Inc.*, 247 Fed. Appx. 403, 405 (3d Cir. 2007). Here, the Contract explicitly required Callery to submit a *written letter* to "preserve [his] rights." (Compl., Ex. A at 4.) The Complaint does not allege that he did so. Consequently, the Complaint fails to state a claim for breach of contract and Count One should be dismissed.

**C.     Count Two, for Breach of the Covenant of Good Faith and Fair Dealing, Should Be Dismissed As Duplicative of Count One, for Breach of Contract.**

"To the extent [a] fair dealing claim is merely a restatement of [a] breach of contract claim, it should be dismissed because Pennsylvania does not recognize a separate cause of action for breach of [the covenant of] good faith and fair dealing for the actions forming the basis of the breach of contract." *Wulf v. Bank of America, N.A.*, 798 F.Supp.2d 586, 594 (E.D. Pa. 2011).[7]

Here, Count Two, for breach of the covenant of good faith and fair dealing, like Count One, for breach of contract, merely incorporates the factual allegations in the Complaint, adds nothing to them, and alleges, in conclusory fashion, that "Defendants have breached their covenant of good faith and fair dealing with Plaintiff and the Class Members." (Compl. ¶¶ 34-35.) Both claims depend on a showing that HOP charged Callery more than the HOP Prevailing Price and seek the same damages – "in excess of $50,000" – apparently representing the difference between

---

[7] *See also Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000); *McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Bus. Trust*, 2009 WL 1292808, at *2 (W.D. Pa. May 7, 2009); *U.S. Small Bus. Admin v. Progress Bank*, 2004 WL 2980412, at *4-5 (E.D. Pa. Dec. 22, 2004).

7104141.1

(i) the prices HOP actually charged, and (ii) the lower of the Capped Price and the HOP Prevailing Price.  (Compl. at pp. 8-9 & Ex. A at 1.)  Accordingly, Callery's covenant of good faith claim duplicates his contract claim and should be dismissed.  *Mirkin v. XOOM Energy, LLC*, 342 F. Supp.3d 320, 331 (E.D.N.Y. 2018), *aff'd in part, rev'd in part*, 931 F.3d 173 (2d Cir. 2019) (dismissing good faith claim because "[j]ust as in *Melville v. Spark Energy*, '[t]hese allegations are ones that arise from the contract itself – they center on what the [agreement] promised and whether [defendant] fulfilled that promise'") (quoting *Melville v. Spark Energy, Inc.*, 2016 WL 6775635, at *5 (D.N.J. Nov. 15, 2016)).

### D.   Count Three, for Common Law Fraud, and Count Four, for Violation of the UTPCPL, Should Be Dismissed.

#### 1.   *The "Economic Loss" Doctrine Bars Callery's Common Law Fraud Claim.*

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'"  *Werwinkski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002) (citation omitted).  The doctrine applies to intentional fraud claims.  *Id.* at 680-81.  It bars tort claims:

> "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

*Pesotine v. Liberty Mut. Group, Inc.*, 2014 WL 4215535, at *4 (M.D. Pa. August 25, 2014) (quoting *Reed v. Dupuis*, 920 A.2d 861, 864 (Pa. Super. Ct. 2007)).

In his common law fraud claim, Callery only seeks recovery for economic loss – *i.e.*, "'loss that is neither physical injury nor damage to tangible property.'"  *Sarsfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 556 (M.D. Pa. 2010) (citation omitted).  However, to the extent Callery's common law fraud claim is based upon the Capped Pricing Agreement and the Alleged Intention to Breach, that claim is based upon a term in the Contract and not a separate representation.  As

9

such, the Complaint fails to "'articulate harm that is distinct from the disappointed expectations evolving solely from an agreement,'" as would be necessary "'[t]o avoid application of the economic loss doctrine.'" *Rosenfield v. Frank*, 2019 WL 2355588, at *7 (M.D. Pa. June 4, 2019) (quoting *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017)). Accordingly, to the extent Callery's common law fraud claim is based upon the Capped Pricing Agreement and the Alleged Intention to Breach, any recovery by Callery would lie in contract, and the economic loss doctrine bars that claim.[8]

### 2. *The "Gist of the Action Doctrine" Bars Callery's Common Law Fraud Claim.*

The "gist of the action doctrine" provides that "'an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" *Earl v. NVR, Inc.*, 990 F.3d 310, 314-15 (3d Cir. 2021). In *Earl*, the Court explained that the Pennsylvania Supreme Court has established the following test for applying the doctrine:

> "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."

---

[8] "An exception to the applicability of [the] economic loss doctrine exists for certain claims based on fraud in the inducement where the fraud is 'extraneous to the alleged breach of contract, not interwoven with the breach of contract.'" *McGuckin v. Allstate Fire and Cas. Ins. Co.*, 118 F.Supp.3d 716, 721-22 (E.D. Pa. 2015) (citation omitted). "Thus, '[i]nducement claims remain viable only when a party makes a representation extraneous to the contract, but not when the representations concern the subject matter of the contract or the party's performance.'" *Id.* (citations omitted). Because Callery's fraud allegations based upon the Capped Pricing Agreement and the Alleged Intention to Breach concern the subject matter of the Contract and HOP's performance thereunder, *i.e.,* allegedly charging more than the HOP Prevailing Price, they are interwoven with the alleged breach of contract and the exception to the economic loss doctrine for fraudulent inducement through conduct that is extraneous to the Contract is inapplicable.

7104141.1

*Earl*, 990 F.3d at 315 (quoting *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 112, 106 A.3d 48, 68 (2014)).

In other words, the court asks: "[W]hat's this case really about?"  *Tray, Inc. v. Devon International Group, Inc.*, 2021 WL 1734845, at *7 (E.D. Pa. May 3, 2021) (citations omitted).

Here, to the extent Callery's common law fraud claim is based upon the Capped Pricing Agreement or the Alleged Intention to Breach, it is based solely on a "'specific promise to do something that [HOP] would not ordinarily have been obligated to do but for the existence of the [C]ontract'" because it is based entirely on an agreement that appears in the Contract.  *Earl*, 990 F.3d at 315 (quoting *Bruno*, 630 Pa. at 112, 106 A.3d at 68).  The Complaint confirms this by "aver[ring] that Defendants knew at the time they entered into the Contract that they did not intend to honor their promise to charge Plaintiff the actual prevailing retail price for heating oil …." (Compl. ¶ 12.)  Accordingly, to the extent Callery's common law fraud claim is based upon the Capped Pricing Agreement and the Alleged Intention to Breach, the "gist of the action doctrine" bars that claim.[9]

### 3. *Callery's Claims for Common Law Fraud and for Violation of Numerous States' Consumer Protection Laws Fail to Satisfy Rule 9(b) or to State a Claim.*

"Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of 'the precise misconduct with which [it is] charged.'"  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation

---

[9] *See Tray, Inc.*, 2021 WL 1734845, at *9 ("Cognizant of our Court of Appeals' instruction to ask '[w]hat's this case really about?', we find this case is really about the Devon Entities' failure to deliver PPE in a timely manner as contemplated by the parties' agreement.  The gist of this action lies in contract, not in tort."); *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 2022 WL 2985632, at *19 (E.D. Pa. July 28, 2022). ("In sum, because the representations … that Plaintiff alleges fraudulently induced PCC to enter into the PSA were ultimately incorporated into the PSA, NPT's fraud claim sounds in contract, not tort, and is barred by the gist of the action doctrine.").  *Cf. Earl*, 990 F.3d at 315 ("gist of the action doctrine" was inapplicable where complaint was "not primarily premised upon the terms of the contract, however, but on the marketing and representations that induced her to enter into the contract in the first instance").

omitted).  To satisfy this requirement, the plaintiff must plead "the 'who, what, when, where, and how' of the events at issue." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (citation omitted).

Callery's claims for common law fraud, under the UTPCPL, and for violation of the Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey and Delaware consumer protection statutes should be dismissed because they fail to comply with Rule 9(b) and because they fail to state a claim.  The Complaint fails to plead any nonconclusory facts supporting an assertion that the Follow the Market Representation, the Competitive Pricing Representation, the Capped Pricing Agreement, the Alleged Intention to Breach, or the Second Representative Statements were false, misleading or deceptive.  (*See* Section III.A *supra*.)  The Complaint also does not state the time, date or place of any alleged extra-contractual representation (either before or after the Contract was signed) setting forth the Capped Pricing Agreement or concealing the Alleged Intention to Breach.  In addition, the Complaint fails to allege the identity of either representative with whom Callery allegedly spoke on May 19, 2020.  *See Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) ("The complaint fails to attribute the statement to any specific member of GNC management.  Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of the allegedly fraudulent statements").  Finally, Callery does not (and cannot possibly) allege that he relied upon, or suffered any damages as a result of, the Second Representative Statements.  (Section III.A *supra*.)

For these reasons, Callery has not provided sufficient information in the Complaint to put HOP "on notice of the 'precise misconduct with which [it is] charged,'" *Frederico*, 507 F.3d at 201, and he has failed to plead the elements of a representation, falsity, unfair or deceptive act or practice, reliance, causation and damages as to the alleged representations or omissions he attempts to plead.  Accordingly, the Court should dismiss Counts Three, Four and Six under Rule 9(b) and for failure to state a claim.

7104141.1

**E.   Callery's Claim in Count Five, for Violation of N.Y. Gen. Bus. Law § 349, Fails to State a Claim and Should Be Dismissed.**

In Count Five, Callery asserts a claim *on behalf of himself* and other Class Members under N.Y. Gen. Bus. Law § 349.  Count Five fails to state a claim for the reasons set forth in sections III.A and III.D.3 above.

Further, a plaintiff cannot bring a claim under section 349 merely because he or she transacted with a New York party.  *Wright v. Publishers Clearing House, Inc.*, 439 F.Supp.3d 102, 110 (E.D.N.Y. 2020); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009).  Instead, "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."  *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 325, 774 N.E.2d 1190, 1195 (2002).[10]  This standard can only be met where "'some part of the underlying transaction … occur[red] in New York State.'"  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013) (quoting *Mountz v. Global Vision Prods., Inc.*, 3 Misc.3d 171, 177, 770 N.Y.S.2d 603, 608 (NY. Sup. Ct. N.Y. Co. 2003)).[11]

Callery is a Pennsylvania resident who was allegedly deceived in Pennsylvania and damaged by an oil delivery to his Pennsylvania residence, and HOP allegedly did business with him and others in Chester County through its DDM office in West Chester, Pennsylvania.  (Compl. ¶¶ 1-5, 8-10 & Ex. A at pp. 1, 5-6.)[12]  Accordingly, he has no claim under section 349.  *Cruz*, 720 F.3d at 124; *Goshen*, 98 N.Y.2d at 326, 774 N.E.2d at 1196 ("Plaintiff in *Goshen* concedes that he received MONY's information in Florida.  He purchased his policy and paid his premiums in

---

[10] *See also Kaufman v. Sirius XM Radio, Inc.*, 474 F.App'x 5, 7 (2d Cir. 2012) ("*Goshen* … forecloses plaintiffs' reliance on allegations that deceptive terms and conditions were published on a website controlled from New York, when there is no further allegation of plaintiffs' receipt of this information in New York.").

[11] It has also been held that "'non-New York plaintiffs cannot allege that they were deceived in New York.'" *Bristol Village, Inc. v. Louisiana-Pacific Corporation*, 170 F.Supp.3d 488, 498 n.3 (W.D.N.Y. 2016).

[12] The Contract lists DDM, not HOP, and provides the DDM telephone number in Pennsylvania, which is the information Callery had at the time of the Telephone Call.  (Compl. ¶ 11 & Ex. A at 1, 5-6.)

13

7104141.1

Florida, through a Florida insurance agent.  Plainly, for purposes of section 349, any deception

took place in Florida, not New York."); *Wright*, 439 F.Supp.3d at 112 ("The plaintiffs in *Cruz*

escaped [*Goshen*] because they directly participated in a marketplace located in New York.").

> **F.   Counts Five and Six, for Violation of Seven States' Consumer Protection Statutes, Should Be Dismissed Because Callery Lacks Standing To Bring Claims Arising Under the Laws of States Where He Did Not Sustain Injury.**

Because Callery has not alleged that he sustained injury in New York, Vermont,

Massachusetts, Rhode Island, Connecticut, New Jersey or Delaware, he lacks standing to assert

claims on behalf of unnamed Class Members residing in those states under those states' consumer

protection laws.[13]

Further, while Count Six asserts a claim under the Massachusetts consumer protection

statute, Mass. Gen. Laws., ch. 93A, Regulation of Business Practice for Consumer Protection (the

"Massachusetts Statute"), that claim is also barred because Callery failed to send a written demand

at least 30 days before he filed the Complaint, as required under Massachusetts law.  Mass. Gen.

---

[13] "The issue of Article III standing in class action lawsuits presents an unsettled question on which courts, including in the Third Circuit, are split." *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 2022 WL 736250, at *17 (D. Del. Mar. 11, 2022). **Compare** *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 100204, at *14 (D.N.J. Jan. 12, 2021) ("As named Plaintiffs neither reside in nor have alleged they suffer an injury in thirty-one other states and territories, their claims in these jurisdictions will be dismissed without prejudice for want of standing"); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) ("Plaintiffs[] lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) ("Because standing must be resolved on a claim-by-claim basis, the Court agrees with defendants that the 'named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.'") (citation omitted) **with** *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 831 (E.D. Pa. 2019) (declining to dismiss case because "state law claims of the named [plaintiffs] largely parallel those of the putative class members"); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 462 (M.D. Pa. 2019) ("Plaintiffs' capacity to state claims under the laws of other states on behalf of putative class members ... is a matter to be decided under the rubric of Rule 23, not constitutional standing under Article III.").

However, for the reasons set forth in *In re Sensipar*, 2022 WL 736250, at *16-18, and *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 758, the better view is that a class action can only be filed under the consumer protection laws of a state in which at least one named plaintiff resides or sustained injury. *See also Heater v. Gen. Motors, LLC*, 568 F. Supp. 3d 626, 643-44 (N.D.W. Va. 2021); *Knapp v. Zoetis Inc.*, 2021 WL 1225970, at *8-10 (E.D. Va. Mar. 31, 2021); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 407-10 (D. Md. 2012); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011).

Laws Ann., ch. 93A § 9; *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004); *City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 506 N.E.2d 106, 109 (1987); *Roberts v. Crowley*, 538 F.Supp.2d 413, 420-21 (D. Mass. 2008).  Thus, Counts Five and Six should be dismissed.

### G.   Several of the Claims in the Complaint Are Time-Barred in Part.

Under Pennsylvania law, a claim for breach of contract is time-barred if it is filed more than four years after the breach, 42 Pa. Cons. Stat. Ann. § 5525(a)(8); *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 493 (E.D. Pa. 2018), and claims for common law fraud and breach of the implied covenant of good faith are time-barred if they are filed more than two years after the claim accrued. 42 Pa. Cons. Stat. Ann. § 5524(7); *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 558 (W.D. Pa. 2009).  Further, consumer protection claims under New York, Delaware and Connecticut law must be commenced within three years after accrual, N.Y. C.P.L.R. § 214(2); 10 Del. Code Ann., tit. 10, § 8106(a); Conn. Gen. Stat. Ann. § 42-110g(f), and consumer protection claims under the Massachusetts Statute must be commenced within four years after accrual.  Mass. Gen. Laws Ann. ch. 260, § 5A.  To the extent the Complaint asserts such claims on behalf of Class Members beyond those limitations, the claims are time-barred and should be dismissed.

### H.   Callery's Request for Punitive Damages Should be Stricken.

Callery seeks punitive damages on Counts Three through Six.  Yet, in Section 11 of the Contract, the parties waived any claim for punitive damages.  (Compl., Ex. A § 11.)  Further, "[t]he UTPCPL … does not 'confer a right to impose punitive damages.'" *Richards v. Ameriprise Financials, Inc.*, 152 A.3d 1027, 1034-35 (E.D. Pa. 2016) (citation omitted).  Consequently, the request for punitive damages should be stricken.

## IV.   CONCLUSION

The Court should grant the Motion and dismiss the Complaint with prejudice.

Dated:  Philadelphia, Pennsylvania
           August 22, 2022

7104141.1

**KLEINBARD LLC**


By: */s/ Edward Butkovitz*
　　　Edward T. Butkovitz
Id. No. 309565
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Tel.:  (215) 568-2000
Email:  ebutkovitz@kleinbard.com

**OTTERBOURG P.C.**
William M. Moran (admitted *pro hac vice*)
Andrew S. Halpern
Breahna S. Wright (admitted *pro hac vice*)
230 Park Avenue
New York, New York 10461
Tel.:  (212) 661-9100
Email:  wmoran@otterbourg.com
　　　　ahalpern@otterbourg.com
　　　　bwright@otterbourg.com

*Attorneys for Defendant HOP Energy, LLC*

16

7104141.1