## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN CALLERY

              **Plaintiff,**

    **v.**

HOP ENERGY, LLC

              **Defendant.**

**CIVIL ACTION NO. 20-3652**

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                       **March 22, 2023**

Plaintiff Brian Callery, on behalf of himself and all others similarly situated, filed suit in state court against Defendant HOP Energy, LLC, asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, common law fraud, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL")[1], and violations of the consumer protection statutes of seven other states in which Defendant operates.[2] Defendant removed the case to this Court, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").[3]

Shortly thereafter, Plaintiff filed a motion to remand the case to state court, contending that CAFA did not apply. Defendant also moved to dismiss the case. In an order dated March 24, 2021, the Court dismissed Plaintiff's motion to remand without prejudice pending further

---

[1] 73 P.S. § 201-1, *et seq.*

[2] There are six counts asserted in the Complaint. There appears to be a numbering error, as they are denominated as "Count One," "Count Two," "Count Three," "Count Four," "Count IV," and "Count V" in the Complaint.

[3] 28 U.S.C. § 1332(d).

jurisdictional discovery directed at the CAFA's amount in controversy requirement.[4] The Court also dismissed Defendant's motion to dismiss without prejudice, subject to renewal after the ordered jurisdictional discovery was completed.[5] Following the appointment of a Special Discovery Master and a period of discovery to determine jurisdiction, Plaintiff filed a second motion to remand, which the Court denied.[6] Defendant has now filed a Renewed Motion to Dismiss the Complaint. For the reasons discussed below, Defendant's Renewed Motion to Dismiss is granted in part and denied in part.

## I.    BACKGROUND[7]

Defendant provides residential and commercial heating oil and related services to customers in eight states. Defendant offers variable, fixed, and capped pricing programs for its full-service customers receiving automatic delivery. The prices under the variable price program are based upon the prevailing retail price of oil and increase or decrease as market conditions fluctuate. The fixed price program provides customers with heating oil at a fixed price over the course of a one-year period. Under the capped price program, which is relevant here, a customer cannot be charged more than a set maximum price, but pays the lower "prevailing retail price" if the price of the oil drops below the maximum price.[8]

---

[4] *See* Order of Mar. 24, 2021 [Doc. No. 25].

[5] *See* Order of Mar. 24, 2021 [Doc. No. 25].

[6] *See* Order of Aug. 9, 2022 [Doc. No. 43].

[7] The factual allegations in Plaintiff's Complaint [Doc. No. 1-1] are assumed true for purposes of evaluating the Renewed Motion to Dismiss.

[8] Compl. [Doc. No. 1-1] ¶ 9.

On April 2, 2020, Plaintiff entered into a retail heating oil delivery and services agreement with Defendant providing for the "automatic delivery" of heating oil to his home (the "Contract").[9] The Contract was established under the capped price program. Defendant agreed to provide up to one thousand gallons of heating oil to Plaintiff at a price not to exceed $2.099/gallon, plus applicable taxes. Plaintiff alleges that he purchased this plan with the understanding that if the prevailing retail price for oil went below $2.099/gallon, he would be charged the lower amount.

On May 19, 2020, Plaintiff received his first delivery of 54 gallons of heating oil at the capped rate of $2.099/gallon. Plaintiff claims he immediately called a representative to ask what the current prevailing retail price for oil was at that time (the "May 2020 Telephone Call"). Plaintiff contends that the first employee he spoke to said the prevailing retail price was $1.55/gallon, but a different representative later told him it was $2.49/gallon.[10] The second representative claimed that the first was mistaken, as the sales department did not know the prevailing retail price of oil. This interaction led Plaintiff to believe that Defendant did not intend to honor its capped price promise and instead would provide a "fake" retail price to customers.[11]

## II.    LEGAL STANDARD

For a claim to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), each claim of a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.[12] The question is not whether the plaintiff will ultimately

---

[9] Compl. [Doc. No. 1-1] ¶¶ 8–9.

[10] Compl. [Doc. No. 1-1] ¶ 11.

[11] Compl. [Doc. No. 1-1] ¶ 12.

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

prevail, but whether the complaint is "sufficient to cross the federal court's threshold."[13] The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief."[14] However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"[15]

## III.   DISCUSSION

### A.   Federal Rule of Civil Procedure 8(a)

Under Federal Rule of Civil Procedure 8(a), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."[16] Defendant argues that the claims in the Complaint are based entirely upon conclusory allegations and that Plaintiff bases his complaint on a single phone call. Therefore, Defendant asserts that the Complaint should be dismissed for failure to comply with Federal Rule 8(a). In response, Plaintiff argues that he alleged the precise misrepresentations made by Defendant, including public advertisements under Defendant's capped price program, public advertisements of competitive prices, language in the Contract about the capped price program, and the telephone conversation with Defendant's representatives in May 2020.

---

[13] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (same).

[14] *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002)).

[15] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3rd Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While the Court need not accept "bald assertions"[17] at the motion to dismiss stage, it must "accept all factual allegations as true."[18] Here, Plaintiff gives the date of a phone call in which he alleges that he spoke with two different representatives, who gave him different answers for the prevailing retail price for oil. Plaintiff thus contends that Defendant did not intend to honor its capped price promise and instead created a fake prevailing retail price. Defendant's arguments regarding the mechanics of its pricing programs and prices charged to other customers, information to which Plaintiff does not have access before discovery, are more appropriate for resolution after the factual record has been developed. Accordingly, the Court declines to dismiss the Complaint under Federal Rule 8(a).

### B.  Federal Rule of Civil Procedure 9(b)

Under Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged."[19] Defendant argues that Plaintiff's common law fraud claim, UTPCPL claim, and claims under other state consumer protection laws fail to satisfy Federal Rule 9(b) or state a claim. Defendant maintains that Plaintiff has not provided sufficient information to put it on notice of the precise misconduct for which it is charged. Specifically, Defendant argues that the Complaint "fails to plead any nonconclusory facts" that representations were false and "does

---

[17] *Burlington Coat Factory*, 114 F.3d at 1429 (quoting *Glassman*, 90 F.3d at 628).

[18] *Philips*, 515 F.3d at 233 (quoting *Pinker*, 292 F.3d at 74 n.7).

[19] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation marks and citation omitted; brackets in *Frederico*).

not state the time, date, or place of any alleged extra-contractual representation . . . .".[20] In response, Plaintiff argues that he has plead fraud with sufficient particularity: he has alleged fraudulent statements on Defendant's website and documents as well as the date, exact statements, and sufficient descriptor of each speaker for Defendant to identify which of its representatives made the statements.

Plaintiff pleads a straightforward fraud: that Defendant made representations on its website and in the Contract that customers would pay the lower of the capped price or the prevailing retail price for home heating oil under the capped pricing program and then engaged in a scheme to overcharge customers. Further, Plaintiff has provided sufficient descriptions of the May 2020 Telephone Call for Defendant to take steps to identify its representatives. Plaintiff has sufficiently put Defendant on notice of its alleged misconduct. Therefore, Plaintiff's common law fraud, UTPCPL, and state consumer protection claims will not be dismissed under Rule 9(b).

C.  Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails because the Contract required him to submit a written letter to preserve his rights, but the Complaint does not allege that he did so. In response, Plaintiff argues that there was no condition precedent, the supposed condition precedent is not a condition that qualified Defendant's duty to charge the prices set forth in the Contract, and Plaintiff did complain to Defendant in writing within the purported time limit by serving his Complaint by letter.

---

[20] Def.'s Mem. L. Supp. Mot. Dismiss [Doc. No. 45-1] at 12.

While a "complaint that alleges a breach of contract without averring compliance with conditions precedent does not state a valid breach of contract claim,"[21] the notice in the Contract concerns customers' "rights and responsibilities under **the Fair Credit Billing Act**."[22] The Contract states that:

> If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill as soon as possible. We must hear from you not later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.[23]

Assuming that this could be considered a condition precedent, this provision by its own terms only applies to claims under the Fair Credit Billing Act, which "imposes on creditors requirements for the correction of billing errors."[24] However, Plaintiff does not bring this suit under the Fair Credit Billing Act. The Complaint does not allege that Plaintiff's bill contained a billing error, but that Defendant engaged in a scheme to overcharge customers for oil. Accordingly, the Court will deny Defendant's Renewed Motion to Dismiss as to the breach of contract claim.

### D. Breach of the Covenant of Good Faith and Fair Dealing

Under Pennsylvania law, there is a "general duty of good faith and fair dealing in the performance of a contract."[25] Defendant argues that Plaintiff's claim for breach of the covenant

---

[21] *Chemtech Intern., Inc. v. Chem. Injection Tech., Inc.*, 247 F. App'x 403, 405 (3d Cir. 2007).

[22] Compl. Ex. A [Doc. No. 1-1] at ECF page 23 (emphasis added).

[23] Compl. Ex. A [Doc. No. 1-1] at ECF page 23.

[24] *Krieger v. Bank of America, N.A.*, 890 F.3d 429, 433 (3d Cir. 2018) (internal quotation marks, alteration and citation omitted).

[25] *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) (citation omitted).

of good faith and fair dealing should be dismissed because it is duplicative of the breach of

contract claim. Defendant asserts that "[b]oth claims depend on a showing that HOP charged

Callery more than the HOP Prevailing Price and seek the same damages. . . ."[26] In response,

Plaintiff argues that the Complaint alleges both a breach of the literal terms of the Contract and

bad faith on the part of Defendant in administering the Contract. Specifically, Plaintiff alleges

that Defendant acted in bad faith (1) by engaging in a scheme in which it created a false, inflated

retail price, and (2) during the May 2020 Telephone Call, when Defendant's representative

quoted the lower prevailing retail price of heating oil, after which another representative claimed

that the first representative was mistaken.

While Pennsylvania recognizes the duty of good faith and fair dealing, "this duty does

not create independent substantive rights."[27] Pennsylvania law "does not allow for a cause of

action separate and distinct from a breach of contract claim."[28] Instead, a claim for the breach of

the covenant of good faith and fair dealing is "subsumed in a breach of contract claim."[29]

Plaintiff's "claim for breach of the covenant of good faith and fair dealing survives—not on its

own—but only as a component of a breach of contract claim."[30] Therefore, the Court will grant

---

[26] Def.'s Mem. L. Supp. Mot. Dismiss [Doc. No. 45-1] at 8.

[27] *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (internal quotation marks and citation omitted).

[28] *Id.* (citation omitted).

[29] *Id.* (quoting *LSI Title Agency, Inc. v. Eval. Servs., Inc.*, 951 A.2d 384 (Pa. Super. Ct. 2008), *appeal denied*, 960 A.2d 841 (Pa. 2008)).

[30] *Furniture Sols. & Res. v. Symmetry Off., LLC*, No. 15-4774, 2015 WL 9302915, at *4 (E.D. Pa. Dec. 22, 2015). Similarly, in *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421 (E.D. Pa. 2015), a consumer brought a putative class action lawsuit against an energy supply company, asserting a combined claim for breach of contract/the implied covenant of good faith and fair dealing, among other state claims. The consumer alleged that the company had a duty to act in good faith in its performance of the contract by charging a rate that was related to market conditions. *Id.* at 430. However, despite this duty, the consumer alleged that the company did not perform as it promised and did not calculate the rate based on market-related factors. *Id.* The court declined to dismiss the claim, as the consumer was not asserting two separate contract causes of action (*i.e.*, one claim for breach of contract

Defendant's Renewed Motion to Dismiss as to Plaintiff's claim for breach of the covenant of good faith and fair dealing, to the extent that Plaintiff pleads it as separate from the breach of contract claim.

E.   Common Law Fraud and Violations of the UTPCPL

1.   *The Economic Loss Doctrine*

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."[31] Defendant argues that the economic loss doctrine bars Plaintiff's claims for common law fraud and violations of the UTPCPL because it contends that Plaintiff only seeks recovery for economic loss. Thus, to the extent that Plaintiff's common law fraud claim is based upon the capped pricing agreement and Defendant's alleged intention to breach, Defendant asserts that any recovery by Plaintiff would lie in contract, and therefore the economic loss doctrine bars that claim. In response, Plaintiff argues that the economic loss doctrine only applies to torts sounding in negligence, whereas in this case, Plaintiff pleads intentional fraud.

The Court of Appeals' decision in *Earl v. NVR, Inc.*[32] is instructive. In *Earl*, the Third Circuit reversed the District Court's dismissal of the plaintiff's UTPCPL claims under the economic loss and gist of the action doctrines. The plaintiff in *Earl* entered into a purchase agreement with the defendant for a new home and alleged that the defendant made

---

and another claim for the breach of the implied covenant of good faith and fair dealing), but instead brought a single contract cause of action. *Id.*

[31] *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618-20 (3d Cir. 2005).

[32] 990 F.3d 310 (3d Cir. 2021).

representations about the home's construction, condition, and amenities.[33] The plaintiff further alleged that the defendant made false representations to her about the home prior to the formation of the contract, in discussions during the contract period, and while the home was in the process of being constructed.[34] The plaintiff discovered material defects after moving into the home.[35]

The Third Circuit determined that the plaintiff's UTPCPL claims were not barred by the economic loss or gist of the action doctrines, because those claims were "not primarily premised upon the terms of the contract, . . . but on the marketing and representations that induced her to enter into the contract in the first instance, as well as statements made to her by agents of [the defendant] during the homebuilding process."[36] Thus, the Third Circuit concluded that the contract was collateral to the defendant's allegedly deceptive actions.[37]

Defendant seeks to distinguish the holding in *Earl* because Plaintiff's claims are based on an express term of the contract, and not a pre-contractual representation or an extra-contractual representation. The Court disagrees. Just as in *Earl*, Plaintiff's common law fraud and UTPCPL claims arise from representations made to him on Defendant's website *before* he contracted with Defendant. Plaintiff alleges that these representations fraudulently induced him to enter the Contract. Therefore, Plaintiff's fraud claims are collateral to the terms of the Contract.

---

[33] *Id.* at 311.

[34] *Id.* at 311-12.

[35] *Id.* at 312.

[36] *Id.* at 315.

[37] *Id.* at 316.

10

Accordingly, the Plaintiff's common law fraud and UTPCPL claims are not barred by the economic loss doctrine.

### 2. *The Gist of the Action Doctrine*

"Under Pennsylvania law, the gist of the action doctrine prevents a purely contractual duty from serving as the basis for a tort claim."[38] "Tort actions arise from the breach of a duty owed to another as a matter of social policy, while breach-of-contract actions arise from the breach of a duty created by contract."[39] "When a duty is created by contract, the gist of the action doctrine requires that a claim for a breach of that duty be brought in contract, not tort."[40] The Pennsylvania Supreme Court established the following test for the gist of the action doctrine:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.[41]

Here, Defendant argues that Plaintiff's common law fraud and UTPCPL claims are based solely on the terms of the Contract, and thus barred by the gist of the action doctrine. Plaintiff argues that the gist of the action doctrine does not bar fraud claims made based on representations made prior to the formation of the contract or during the contract period.

---

[38] *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 216 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65 (Pa. 2014)).

[39] *Id.* (citations omitted).

[40] *Id.* (citation omitted).

[41] *Bruno*, 106 A.3d at 68 (citations omitted).

Indeed, "[c]laims of fraud or fraudulent inducement are not automatically barred by the gist of the action doctrine."[42] As with the economic loss doctrine, fraud claims are not barred when the claims are collateral to, rather than intertwined with, the contractual obligations owed.[43] When the claims "involve matters that became contractual duties," they are considered "intertwined with plaintiff's obligations under the contract" and are therefore barred by the doctrine.[44]

In *Earl*, the Third Circuit held that the gist of the action doctrine did not bar claims where the defendant was alleged to have made false promises to induce the plaintiff to enter an agreement, as well as false statement during the contract period.[45] Similarly, in *SodexoMAGIC,* the Third Circuit held that the plaintiff's fraudulent inducement claim did not depend on the breach of a contractual duty, where plaintiff alleged that defendant "misrepresented and intentionally concealed" information while the parties were negotiating the contract.[46]

In this case, Plaintiff alleges that Defendant misrepresented on advertisements that under the capped plan, "your home heating oil price follows the market but doesn't go above your CAP rate" and that Defendant's "buying power across the northeast gives us access to the region's largest oil supply network and storage facilities, which means we have a consistent supply of home heating oil at competitive prices."[47] Plaintiff alleges that Defendant's representatives made

---

[42] *Hirtle Callaghan Holdings, Inc. v. Thompson*, No. 18-2322, 2022 WL 2048656, at *5 (E.D. Pa. June 7, 2022) (citations omitted).

[43] *Id.*

[44] *Id.*

[45] 990 F.3d at 315-16.

[46] *SodexoMAGIC*, 24 F.4th at 217.

[47] Compl. [Doc. No. 1-1] ¶¶ 6, 7.

further misrepresentations to him during the May 2020 Telephone Call. The Court also notes that Defendant raises this argument at the motion to dismiss stage, but "[b]ecause the gist of the action doctrine requires a fact-intensive analysis, courts are cautious about dismissing tort claims at the motion to dismiss stage based on this doctrine."[48] Therefore, the Court will deny Defendant's Renewed Motion to Dismiss the common law fraud and UTPCPL claims as barred by the gist of the action doctrine.

F.   New York General Business Law Section § 349

New York's consumer protection law, General Business Law § 349 ("NY GBL § 349"), provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."[49] Defendant argues that this count should be dismissed because Plaintiff has not alleged that any deception occurred in New York. In response, Plaintiff argues that Defendant's website may have been maintained in New York and that the representatives he spoke with during the May 2020 Telephone Call may also be in New York. Plaintiff contends that he is "entitled to take discovery to find out if Defendant's lies were told in New York."[50]

"[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."[51] The Complaint alleges that Plaintiff resides in Chester County, Pennsylvania and Defendant does business in that county through its offices located in West

---

[48] *Hirtle Callaghan Holdings, Inc.*, 2022 WL 2048566, at *3.

[49] N.Y. Gen. Bus. § 349(a).

[50] Pl.'s Opp. Mot. Dismiss [Doc. No. 46] at 11.

[51] *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002) (rejecting claims of non-New York residents because they had not alleged that the deceptive transactions themselves occurred in New York).

Chester, Pennsylvania. Defendant's principal place of business is located in White Plains, New York. "[I]t is well-settled that a purchaser does not have standing to bring a Section 349 claim just because he or she transacted with a seller who resides in New York."[52] However, whether the deception of a consumer occurred in New York appears to be a fact-intensive inquiry, "focus[ing] on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties."[53] Discovery may shed additional light on whether "some part of the underlying transaction occurred in New York State."[54] Therefore, the Court declines to dismiss Plaintiff's NY GBP § 349 claim based on standing at this juncture.

G.  State Consumer Protection Statutes

On behalf the proposed class, Plaintiff asserts violations of consumer protection statutes in New York, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, and Delaware. Defendant argues that because Plaintiff has not alleged that he sustained injury in any of these states, he lacks standing to assert claims on behalf of unnamed Class Members. In response, Plaintiff argues that class actions are the exception to the general rule that one person cannot litigate injuries on behalf of another.

---

[52] *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (collecting cases); *see also Kaufman v. Sirius XM Radio, Inc.*, 474 F.App'x 5, 7-8 (2d Cir. 2012) (holding that non-New York plaintiff could not bring a NY GBP § 349 claim based on "allegations that deceptive terms and conditions were published on a website controlled from New York, when there is no further allegation of plaintiffs' receipt of this information in New York").

[53] *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (citation omitted).

[54] *Id.* at 124 (quoting *Mountz v. Global Vision Prods., Inc.*, 3 Misc. 3d 171, 177 (N.Y. Sup. Ct. 2003)) (internal quotation marks and alterations omitted).

14

"[T]he interplay between Article III standing and class standing presents a surprisingly difficult question,"[55] and courts are divided when deciding the issue of whether a named plaintiff has standing to assert claims that only putative class members have.[56] In this case, Plaintiff's own claims "largely parallel those of the putative class members."[57] Therefore, the Court determines that it is "both proper and more efficient to consider whether they may pursue their claims"[58] at the class certification stage under Federal Rule of Civil Procedure 23, rather than dismissing the claims at this stage pursuant to Federal Rule of Civil Procedure 12(b)(1).[59]

H.  Time-Barred Claims

Defendant next contends that several of the claims are time-barred in part and asks the Court to dismiss claims on behalf of the class beyond the statute of limitations of the respective claims. Plaintiff argues that the contours of the class should be addressed at class certification or summary judgment.

If "[t]he pleading does not reveal when the limitations period began to run," "the statute of limitations cannot justify Rule 12 dismissal."[60] The Court cannot conclude at this time that the claims are time-barred in part. There are factual questions that may impact the timeliness of the

---

[55] *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 829 (E.D. Pa. 2019) (quoting *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, 2015 WL 5458570, at *13 (D. Mass. Sept. 16, 2015)).

[56] *Id.* at 828-31 (detailing the schism both within the Third Circuit and in other circuits).

[57] *Id.* at 831.

[58] *Id*.

[59] While not dispositive, the Court notes that Defendant removed this action under the CAFA, which requires an amount-in-controversy minimum of $5 million. After a limited period of discovery to determine jurisdiction, the Court considered damages for a potential class of 64,008 members residing in several different states and relied on this information to deny Plaintiff's motion to remand. *See* Mem. Op. of Aug. 8, 2022 [Doc. No. 42] at 6-8.

[60] *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011).

claims, such as when the alleged fraudulent scheme could have reasonably been discovered. Accordingly, resolution of this question is more appropriate for class certification or summary judgment, after the record has been fully developed.[61] The Court denies Defendant's Renewed Motion to Dismiss the claims as time-barred in part.

I.   Request for Punitive Damages

Finally, Defendant argues that Plaintiff's request for punitive damages be stricken based on Paragraph 11 of the Contract, which states, in relevant part, that "in no event shall either party be liable for consequential, incidental, indirect or punitive damages . . . however caused, even if such party has been advised or is otherwise aware of the possibility of such damage."[62] It also contends that the UTPCPL does not allow for punitive damages. Plaintiff argues that Pennsylvania law allows for punitive damages for fraud claims, and further, the clause cannot be enforced because it is against public policy and because the Contract is a contract of adhesion.

Plaintiff may seek punitive damages for common law fraud in Pennsylvania.[63] Thus, the operative question is whether Paragraph 11 of the Contract bars punitive damages in this case. "[A]lthough exculpatory provisions are generally disfavored, such provisions are enforceable where three conditions are met. First, the clause must not contravene public policy. Second, the contract must be between persons concerning their private affairs. Third, each party must be a

---

[61] *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) ("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") (internal quotation marks, alterations and citation omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss.").

[62] Compl. Ex. A [Doc. No. 1-1] at ECF page 22 (emphasis omitted).

[63] *Klein v. Weidner*, 729 F.3d 280, 296 (3d Cir. 2013) ("It is well established that, under Pennsylvania law, punitive damages may be awarded in cases of common law fraud . . . .").

16

free bargaining agent so the contract is not one of adhesion."[64] "[A]voidance of contract terms on public policy grounds requires a showing of overring public policy from legal precedents, governmental practice, or obvious ethical or moral standards."[65]

The parties have not identified, nor has the Court independently found, any Pennsylvania decision involving the enforcement of a contractual clause barring punitive damages. Although the liability release at issue in the Pennsylvania Supreme Court's decision in *Tayar v. Camelback Ski Corp.* did not mention punitive damages, the court held that it was against public policy to release reckless behavior in an exculpatory clause in a personal injury case.[66] The court reasoned that "were we to sanction releases for reckless conduct, parties would escape liability for consciously disregarding substantial risks of harm to others[.]"[67] Here, Plaintiff alleges intentional conduct, specifically, that he was fraudulently induced into a contract and that Defendant engaged in a fraudulent scheme to charge customers a higher rate for oil. Following the reasoning of *Tayar*, it appears to be against public policy to bar Plaintiff from recovering punitive damages as a matter of law.

However, to the extent that Plaintiff seeks punitive damages under the UTPCPL,[68] the Pennsylvania Superior Court has held that under Pennsylvania law "breach of contract and unfair

---

[64] *Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1199 (Pa. 2012) (citation omitted) (holding that it is against public policy to allow exculpatory releases of reckless conduct).

[65] *Id.* (citation omitted).

[66] *Id.* at 1203.

[67] *Id.*

[68] With respect to the UTPCPL claim, Plaintiff asserts that he and the resident class members are "entitled to recover actual damages or one hundred dollars, whichever is greater, as well as treble damages, costs and reasonable attorneys' fees." Compl. [Doc. No. 1-1] ¶ 44. However, he goes on to request "that the Court enter judgment in his favor . . . awarding compensatory, ***punitive***, statutory and treble damages in an amount in excess of

trade practices claims do not allow for recovery of punitive damages."[69] Accordingly, Plaintiff may pursue punitive damages for his common law fraud claims, but not his claims under the UTPCPL.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion to Dismiss will be granted in part and denied in part. Plaintiff's claim for the breach of the covenant of good faith and fair dealing is dismissed, and his request for punitive damages under the UTPCPL is denied. Defendant's Renewed Motion to Dismiss is denied in all other respects. An order will be entered.

---

$50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper." *Id.* (emphasis added).

[69] *Holland v. The Physical Therapy Inst., Inc.,* No. 1515 WDA 2021, 2023 WL 2544887, at *8 (Pa. Super. Ct. Mar. 17, 2023) (citing *Richards v. Ameriprise Fin., Inc*., 152 A.3d 1027, 1035 (Pa. Super Ct. 2016)); *see also Lindsley v. Am. Honda Motor Co.*, *Inc*., No. 16-941, 2017 WL 2930962, at *10 (E.D. Pa. July 7, 2017) (holding that plaintiff was allowed to recover treble damages, but not punitive damages, for her UTPCPL claim, relying on *Richards*, 152 A.3d 1027).

18