IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BRIAN CALLERY, *et al.*,**

                    Plaintiffs,

            v.

**HOP ENERGY, LLC,**

                    Defendant.

CIVIL ACTION NO.  20-3652

## MEMORANDUM OPINION

**Rufe, J.**                                                    **December 1, 2025**

This consumer fraud class action concerns claims of breach of contract, fraud, and violations of multiple state consumer protection laws.  Plaintiffs seek final approval of a settlement with Defendant HOP Energy (the "Settling Defendant"). Objectors Scott Mawhinney, Ryan Melville, Michelle Mullaney, and Robert Mullaney oppose final approval of the settlement.[1] Defendant HOP Energy does not oppose the Motion.

Under Federal Rule of Procedure 23(e), the Court held a hearing on April 8, 2025, to determine whether the proposed class-action settlement is "fair, reasonable, and adequate."[2] The Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).[3]

For the following reasons, Plaintiffs' Motion will be granted, and the settlement class will be certified and approved.

---

[1] *See* Mot. Final Approval [Doc. No. 122]; Suppl. Obj. [Doc. No. 126].

[2] Fed. R. Civ. P. 23(e)(2).

[3] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

## I.  BACKGROUND

Defendant HOP Energy sells automatic delivery home heating oil plans, where the oil price is governed by the pricing in the customers' contract.[4] Plaintiffs seek to represent a class of customers of Defendant who entered into contracts under which they would be charged "variable" or "prevailing retail" prices for their oil.[5] Plaintiffs allege that some customers were promised that if they signed a "capped price" contract, Defendant would charge them the lesser of their set capped price or the prevailing retail price for residential heating oil. Plaintiffs argue that when heating oil prices fell, Defendant actually charged customers capped prices instead of the potentially lower market price.[6] These are "capped-price" customers.[7] Plaintiffs allege some customers started with "capped" or "fixed-price" contracts for one year, under which the customers were to be charged HOP's variable price or prevailing retail price after the term expired or the customer purchased the specified number of gallons.[8] These customers were "rollover" or "variable-price" customers.[9]

Plaintiffs argue that the "prevailing retail" price means the public price Defendant quotes over the phone and on its Dollarwise website, which "follows the market."[10] Defendant originally contended that "prevailing retail price" refers to internal variable prices maintained by Defendant and that Defendant had the discretion to set the contracts to a level of Defendant's

---

[4] Mem. Supp. Mot. Final Approval at 4 [Doc. No. 122-2].

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.* at 4-5.

[8] *Id.* at 5.

[9] *Id.*

[10] *Id.* at 4.

choice.[11] Plaintiffs assert that Defendant's actions led to overcharges for heating oil purchased in the states where Defendant conducted business.[12]

Plaintiff Brian Callery filed this action in Pennsylvania state court in June 2020, and Defendant HOP Energy removed the case to this Court. Plaintiff Tina Fasano later joined the case as a named Plaintiff. Plaintiffs assert claims of breach of contract, fraud, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, violation of the New York Consumer Protection Law, and violations of the consumer protection laws of Connecticut, Delaware, Massachusetts, New Jersey, Rhode Island, and Vermont.[13]

In December 2021 and August 2023, putative class action complaints were also filed against Defendant in the United States District Court for the Southern District of New York, these are the *Melville* and *Mullaney* class actions.[14] These class actions largely allege the same injury as the Plaintiffs do here, but the class representatives in the *Melville* and *Mullaney* class actions allege injury only due to variable pricing.[15] United States Magistrate Judge Victoria Reznik stayed the litigation in *Melville* and *Mullaney* pending resolution in the present case.[16]

All counsel, including counsel for the parties in the *Melville* and *Mullaney* actions, attended mediation with the Honorable Diane Welsh at JAMS. The parties were not able to reach a settlement.[17] Plaintiffs and Defendant then attempted settlement with the Honorable James T.

---

[11] *Id.* at 5.

[12] *Id.* at 1.

[13] Amend. Compl. at 10-15 [Doc. No. 86].

[14] *See Melville v. HOP Energy LLC*, No. 21-10406, 2023 WL 2648775 (S.D.N.Y. March 17, 2023); *Mullaney v. Hop Energy LLC*, No. 23-7318 (S.D.N.Y. 2021).

[15] Mem. Supp. Melville Mot. Obj. at 27 [Doc. No. 105-1].

[16] Op. and Order, *Melville v. HOP Energy LLC*, No. 21-10406 (S.D.N.Y. Sept. 18, 2024) [Doc. No. 162].

[17] Mem. Supp. Mot. Final Approval at 8 [Doc. No. 122-2].

Giles.[18] At this mediation meeting, the parties were able to reach a Settlement Agreement.

After this Court preliminarily approved the settlement, notice was made to class members and Plaintiffs moved for final approval of the settlement. The class representatives in the *Melville* and *Mullaney* class actions have filed objection, as well as one additional putative class member.[19] The Court held a Final Approval Hearing where oral argument was heard on the Motion for Final Approval which included the parties as well as counsel on behalf of Objectors Ryan Melville, Michelle Mullaney, Robert Mullaney, and Scott Mawhinney ("Objectors").[20]

## II.    CLASS CERTIFICATION – RULE 23(A) AND RULE 23(B)

### A.  The Settlement

The Court preliminarily approved the following Settlement Class:

> All persons in the United States who, between June 23, 2014 and the date of the Preliminary Approval Order, entered into a contract(s) with Defendant for the delivery of heating oil to a residence and who received delivery of heating oil pursuant to such contract during such period pursuant to the contractual "capped" price or pursuant to a variable or prevailing price (including, but not limited to, a "prevailing retail price," "prevailing" price or rate, "prevailing commercial rate," or "Promotional Prevailing Retail" price). Excluded from the Class are: (a) HOP; (b) the officers, directors, and employees of HOP; former HOP employees; (c) any entity in which HOP has a controlling interest; (d) any affiliate or legal representative of HOP; (e) the Judges and Mediators to whom the Action is assigned, the Judge's and Mediators' staff and any member of their immediate family; and (f) any heirs assigns and/or successors of any such persons or entities in their capacity as such.[21]

The Proposed Settlement is a non-reversionary common fund settlement where class members will receive a payment without being required to submit a claim form. Plaintiffs' experts instead recommended a settlement distribution formula based on "the volume of the

---

[18] *Id.* at 9.

[19] *See generally* Mem. Supp. Melville Mot. Obj. [Doc. No. 105-1].

[20] Mot. Hearing Min. Entry [Doc. No. 130].

[21] Mot. Prelim. Approval, Proposed Order at 2 [Doc. No. 85-2].

heating oil the Class Member purchased, and the nature of the allegedly wrongful pricing scheme the Class Member was allegedly victimized by."[22] Members of the classes in *Melville* and *Mullaney* are encompassed in the class and will share in the common fund.

The Common Fund Settlement consists of the remainder of Defendant's insurance policy, less a reserve fund for litigation. The settlement amount is $2,327,530, which was paid into a settlement account under the control of the Settlement Administrator and the Court.[23] Class Members will be divided into three groupings: (1) "Capped Customers," those who were charged their contract price but contend that they should have been charged HOP's COD price; (2) "Variable Customers," those who were charged HOP's Variable Price but contend that they should have been charged HOP's COD price and; (3) "Promotional Customers," those who were charged HOP's Variable Price but contend that they should have been charged a lower, Promotional Prevailing Price.[24] "Promotional Customers receive more points than Variable Customers, who receive more points than Capped Customers."[25] Class Members will receive a payment without being required to submit a claim form, as all potential Class Members are in Defendant's customer records.

Objectors Ryan Melville, Michelle Mullaney, and Robert Mullaney object to the settlement based on the inclusion of variable price customers and on various grounds.[26] One putative class member, Scott Mawhinney, has also objected to the settlement on various

---

[22] Mem. Mot. Prelim. Approval at 2 [Doc. No. 85-1].

[23] *Id.* at 7.

[24] *Id.* at 8.

[25] *Id.* This is because Variable Customers were charged higher prices than Capped Customers, and Promotional Customers claim they were entitled to an even lower price than Variable Customers.

[26] Mem. Supp. Melville Mot. Obj. [Doc. No. 105-1]; Suppl. Obj. [Doc. No. 126].

grounds.[27] Mawhinney joins in Melville, Mullaney, and Mullaney's Objections and Melville, Mullaney, and Mullaney join in Mawhinney's Objections, so Melville, Mullaney, Mullaney, and Mawhinney will collectively be referred to as the Objectors.[28] The Objections are addressed as the Court considers each factor in approving the settlement.

**B.  Rule 23(a)**

To certify a class, the Court first must determine under Rule 23(a) that the following factors are met: numerosity, commonality, typicality, and adequacy of representation.[29] There are no objections as to numerosity or commonality.

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable."[30] Plaintiffs assert that there are over 50,000 class members.[31] This number is plainly sufficient to satisfy numerosity.

Rule 23(a)(2) requires that class members share common questions of law or common questions of fact. Commonality is satisfied where the class members share even a "single" common question capable of class wide resolution.[32] The Third Circuit has indicated that the bar to satisfy the commonality requirement is low.[33] Here, there are common issues of law and fact as to all class members:

> (1) they entered into contracts with Defendant containing the phrase "our prevailing retail price;" (2) they purchased heating oil from Defendant and were charged more that the prevailing retail price or the contractual price, if lower; (3) the Defendant engaged in fraudulent or deceptive conduct which created a

---

[27] Mawhinney Obj. [Doc. No. 106]; Suppl. Obj. [Doc. No. 126].

[28] Mullaney Obj. [Doc. No. 105]; Mawhinney Obj. [Doc. No. 106]; Suppl. Obj. [Doc. No. 126].

[29] Fed. R. Civ. P. 23(a).

[30] Fed. R. Civ. P. 23(a)(1).

[31] Mem. Supp. Mot. Final Approval at 15 [Doc. No. 122-2].

[32] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 395 (2011).

[33] *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), as amended (Oct. 16, 2001) (collecting cases).

likelihood of confusion or misunderstanding; [and (4)] they incurred losses of money or property as a result of Defendant's conduct.[34]

## **Typicality**

Typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."[35] The typicality requirement ensures that the interests of named plaintiffs are aligned with the interests of the absent class members, and the Third Circuit recognizes that "typicality and adequacy of representation tend to merge."[36] As with commonality, the threshold for satisfying the typicality requirement is low.[37]

Objectors argue that named Plaintiff Mr. Callery is atypical of the class and that, accordingly, typicality cannot be satisfied.[38] Class counsel acknowledged that it is "virtually certain. . . that not *every* single customer has been injured in the same manner as [Mr. Callery]."[39] Objectors argue this recognition is proof that the position of the class representative is "markedly different from that of other members of the class even though common issues of law or fact are present."[40]

To determine whether a plaintiff is markedly different from the class as a whole, the Court considers the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class.[41] This analysis considers:

---

[34] Mem. Supp. Mot. Final. Approval at 16 [Doc. No. 122-2].

[35] *Baby Neal v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994) (citation omitted).

[36] *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875, 2023 WL 1818922, at *9 (D.N.J. Feb. 8, 2023).

[37] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 428; *Newton*, 259 F.3d at 182-83.

[38] Mawhinney Obj. at 10-11 [Doc. No. 106].

[39] Pl.'s Reply Mem. Supp. Second Mot. Remand at 3 [Doc. No. 40].

[40] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012) (internal citation omitted).

[41] *Id.* (citing *In re Schering Plough Corp.*, 589 F.3d 585, 597 (2009)).

three distinct, though related, concerns: (1) the claims of the class representative must generally be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.[42]

"If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."[43]

Objectors provide no factual support for their claim that a recognition of factual variations between class representatives and certain class members amounts to marked differences in position. It is apparent that given variations between capped-price contracts, variable-price contracts, and promotional-price contracts, not every customer would have suffered injury in the same manner as Mr. Callery. Indeed, class counsel clarified at the final approval hearing that not all customers are class members.[44] If a customer did not make a purchase under the prevailing retail price, but otherwise purchased from HOP Energy, then they are not a class member.[45] This variation does not undermine the shared legal theory being advanced and shared factual circumstances underlying that theory. Mr. Callery is not subject to a defense that is inapplicable to many members of the class and would be likely to become a major focus of future litigation.[46] Mr. Callery's interests and incentives are sufficiently aligned with those of the class.

---

[42] *Schering Plough*, 589 F.3d at 599.

[43] *Marcus*, 687 F.3d at 598.

[44] Final Approval Hr'g Tr. at 17 [Doc. No. 131].

[45] *Id.*

[46] Objectors cite *Abraham v. Ocwen Loan Servicing, LLC* in support of their argument that Mr. Callery is atypical. 321 F.R.D. 125, 153 (E.D. Pa. 2017). Objectors fail to appreciate that typicality was not found in that case because the class representatives were subject to defenses not shared by many putative class members. Specifically, the

Further, class counsel's representations that Mr. Callery's injury likely was not identical to those of all customers were made prior to discovery and prior to receiving more detail from HOP regarding the harmed putative class members. Class counsel's representations about Mr. Callery did not stake a position adverse to the class in this representation.

Because each of the class representatives entered into home heating oil contracts[47] that contained the misleading "prevailing retail price" language and were charged higher prices when Defendant should have charged the actual prevailing retail price,[48] the claims of Class Representatives are typical of the class. Plaintiffs have met the low threshold for typicality here. Whether there are slight factual variations in the circumstances between class members, between named plaintiffs, or between named plaintiffs and the entirety of the classes is immaterial in evaluating typicality. Therefore, the class satisfies typicality.

**<u>Adequacy</u>**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[49] Plaintiffs must demonstrate that the class representative has "a minimal degree of knowledge about the case and [has] no conflict of interest with class counsel and [the] members of the class[.]"[50] Further, the abilities of the class representatives and counsel to adequately represent the class are presumed and "the burden is on the defendant to

---

atypical class representatives did not show that they suffered an ascertainable harm because statutory damages were not available. *Id*. at 185. Mr. Callery did sufficiently allege that he suffered loss.

[47] Plaintiff Brian Callery entered into a Capped Price contract, while Plaintiff Tina Fasano entered into a Rollover contract.

[48] Mem. Supp. Mot. Final Approval at 17-18 [Doc. No. 122-2]

[49] Fed. R. Civ. P. 23(a)(4).

[50] *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 209 (3d Cir. 2022) (last alteration in the original).

demonstrate that the representation will be inadequate."[51]

Plaintiffs argue that the Class Representatives "assert the same claims as class members and are not antagonistic to other members," and Class Counsel "has extensive experience in complex commercial litigation."[52]

*Adequacy of Class Counsel*

Courts "have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant."[53] In certifying a class under 23(a), class counsel are presumed adequate.[54]

Plaintiffs argue that class counsel are adequate because they have extensive experience in complex commercial litigation. Objectors lodge various objections. They argue that class counsel have no experience representing a class action and argue there are seven reasons for finding class counsel inadequate. None of these reasons are compelling enough to overcome the presumption of adequacy of class counsel.

Objectors first allege that Mr. Callery's RICO filing created an "inherent conflict,"[55] referring to a RICO filing by Mr. Callery and his counsel against HOP and ten non-parties.[56] Objectors claim this filing publicly disclosed confidential information obtained in the course of this case, and that sealing the complaint and filing did not repair the harm.[57] They argue this

---

[51] *In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 430 (E.D. Pa. 1984) (citing *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982) (abrogated on other grounds)).

[52] Mem. Supp. Mot. Final Approval at 18 [Doc. No. 122-2].

[53] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995).

[54] *Asbestos Sch. Litig.*, 104 F.R.D. at 430.

[55] Mem. Supp. Melville Mot. Obj. at 33 [Doc. No. 105-1].

[56] *Callery v. Delos Capital, LLC*, No. 23cv4784-CMR (E.D. Pa. Dec. 13, 2023).

[57] Mem. Supp. Melville Mot. Obj at 3-4, 33 [Doc. No. 105-1].

filing's "looming repercussions" creates an inherent conflict for class counsel.[58] Yet, Objectors cite only a district court case finding class counsel inadequate when plaintiffs' counsel made several missteps, including disregarding court-ordered timelines, failing to comply with discovery orders, and general dilatory behavior.[59] Notably, Objectors do not provide any legal or factual support for their claim that the RICO filing created an inherent conflict.

Second, Objectors alleged that counsel are inadequate because they brought a hard-to-certify class action in fraud, then "staked multiple positions that are adverse to the class, including that damages are very low, that Mr. Callery is atypical, and that many capped price customers are uninjured."[60] Objectors' insistence that class counsel staked a position that Mr. Callery is atypical is not grounded in the record. As discussed above, Mr. Callery is not atypical of the class and class counsel's acknowledgement of variation between HOP customers did not stake a position adverse to the class. Further, class counsel clarified at the Final Approval Hearing that each class member was a victim of the pricing scheme, and uninjured customers were not included in the class.[61] Objectors did not present sufficient evidence to overcome the presumption of adequacy of class counsel, particularly because this action was properly brought as a class action and the positions staked were not adverse to the class.

Third, Objectors argue that counsel advanced an impermissible "opt-in" class at first, then "greatly expanded" the original class at settlement.[62] While the claims were brought in state court as an opt-in class, an opt-in argument was brought only prior to a ruling on Plaintiff's

---

[58] *Id*. at 33.

[59] *Vinson v. Seven Seventeen HB Philadelphia Corp.*, No. Civ.A 00-6334 2001 WL 1774073, at *1-6 (E.D. Pa. Oct. 31, 2001).

[60] Mem. Supp. Melville Mot. Obj. at 33 [Doc. No. 105-1].

[61] Final Approval Hr'g Tr. at 108 [Doc. No. 131].

[62] Mem. Supp. Melville Mot. Obj. at 33 [Doc. No. 105-1].

remand request.[63] The opt-in argument also took place prior to discovery from HOP that would enable Plaintiff to ascertain the class.

Plaintiff Callery initially brought a claim on behalf a proposed class of:

> All persons who entered into contracts with Defendants for the delivery of heating oil to a resident, under terms including a capped pricing program and/or a prevailing retail price for the price of the heating oil, and who received delivery of heating oil during the time period commencing six years before the filing date of this action.[64]

which is not a substantially smaller class than the current class and includes both capped-price and variable-price customers. Class counsel's opt-in argument is reflective of a desire to litigate in state court, but it does not, absent a pattern of dilatory behavior and missteps, make class counsel inadequate representatives of the class.

Fourth, Objectors allege the preliminary approval submission omits "key information," including the total number of class members, the number in each tier, the number in each state, how payments are calculated, the likely recovery range, the amount of alleged overcharges, and information about the *Melville* case.[65] Objectors inaccurately cite Plaintiffs' statements regarding alleged withheld information made in response to Objectors' motion for discovery and omit the remainder of Plaintiffs' statement:

> Objectors seek various information about the Settlement Class and payments to Class Members. The exact metrics will be provided to the Court in [Plaintiffs'] Motion for Final Approval. There is no reason why *Objectors* need them before then because they are not relevant to analyzing the fairness of the Settlement Agreement.[66]

---

[63] Pl.'s Mem. Opp. Def.'s Mot. to Dismiss at 16 [Doc. No. 15]. Objectors cite a stricken Memorandum Opinion in Opposition to Defendant's Motion to Dismiss, which is not part of the record. Order Striking Mem. [Doc. No. 20]. However, Plaintiff's revised Memorandum included the same argument. Pl.'s Revised Mem. Opp. Def.'s Mot. to Dismiss at 13 [Doc. No. 21].

[64] Compl., ¶ 15 [Doc. No. 1-1].

[65] Mem. Supp. Melville Mot. Obj. at 10, 12, 14, 33 [Doc. No. 105-1].

[66] Pl.'s Mem. Opp. To Objs.' Mot. for Limited Disc. at 12 [Doc. No. 100] (emphasis added).

Plaintiffs neither failed to provide the Court nor class members with necessary information. Rather, Plaintiffs refused to provide additional detail to Objectors prior to moving for final approval, which they have now done.

Plaintiffs' notice to class members was sufficient, as discussed below. Objectors rely solely on motions for preliminary approval and briefing predating the Motion for Final Approval to support their argument that Plaintiffs did not disclose sufficient information. They also rely largely on cases ruling on motions for preliminary settlement approval to argue the Court was not provided sufficient information. Objectors claim class members have been "ambush[ed]" because Objectors were not provided certain information.[67]

The Final Approval Motion describes the formula for distribution of funds, which uses "a points system that takes into account the volume of heating oil each Class Member purchased as well as the nature of the claims."[68] Plaintiffs provided a payout spreadsheet providing information on payouts, subject to update after the issue of attorney's fees is resolved.[69] Plaintiffs provided evidence of the number of class members, determining that a total of 50,035 unique class members existed based on HOP Energy's records. Verita Global, LLC was appointed as Settlement Administrator and caused short-form notice to be sent to all members on the class list.[70] Short form notice was both mailed and emailed where valid email addresses were available.[71] A settlement website, toll-free telephone number, and an email address are maintained to provide information about the settlement.[72]

---

[67] Mem. Supp. Melville Mot. Obj. at 13 [Doc. No. 105-1].

[68] Mem. Supp. Mot. Final Approval at 11 [Doc. No. 122-2].

[69] Mem. Supp. Mot. Final Approval, Ex. B-1 [Doc. No. 122-5].

[70] Mem. Supp. Mot. Final Approval, Ex. C Angelique Dizon Decl. ¶¶ 1-5 [Doc. No. 122-6].

[71] *Id.* ¶¶ 5-6.

[72] *Id.* ¶¶ 7-8.

Objectors argue that detailed damages calculations must be presented for the Court to conduct a fairness inquiry. They provide no caselaw from this district, nor this circuit, to support their claims that detailed damages calculations are necessary. Further, as discussed below, fairness of a settlement is based not just on the value of plaintiffs' claims, but also on the Defendant's ability to withstand a greater judgment.[73]

Objectors provide no support for claims that information regarding the *Melville* case ought to have been disclosed by Plaintiffs to the Court or to class members. This class action is greater in scope than the *Melville* action, and *Melville* plaintiffs had an opportunity to participate in global settlement conferences with all parties. The presence of a later-filed, less expansive case in another district alone does not evidence lack of superiority of the class action—particularly when the other action is also a class action suit.

Fifth, Objectors argue that class counsel was inadequate because they requested to be paid the maximum amount from a dissipating fund, which ensured class counsel and Defendant's counsel will be paid and class members bear the risk.[74] As Plaintiffs recognize, an attorney fee request of one-third of the common fund is well within an appropriate range of fee awards in common fund cases.[75] Requesting this fee, even if it is from a dissipating fund, does not evidence inadequacy of class counsel. Still, this Court has jurisdiction to award attorney's fees and will conduct an independent review of the attorney fee request.[76]

---

[73] *See infra* Sec. IV: Settlement Fairness.

[74] Mem. Supp. Melville Mot. Obj. at 34 [Doc. No. 105-1].

[75] *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *14 (E.D. Pa. Nov. 12, 2012) ("In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund."); *see also Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) ("A study referenced by another court in [the Eastern District of Pennsylvania] analyzed 289 class action settlements ranging from under $1 million to $50 million and determined that the average attorneys' fees percentage to be 31.71% and the median to be one-third."(citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001))).

[76] *See infra* Sec. V: Attorneys' Fees.

Sixth, Objectors allege that class counsel missed the class certification deadline.[77] Objectors argue that class counsel requested an extension for the time to file for class certification and was denied. However, Objectors cite to an order denying "parties' request for an extension of case management deadlines."[78] Plaintiffs did not file a motion requesting an extension specifically relating to the class certification deadline, and this Court's order reflects a joint request for extension by Plaintiffs and Defendant. Class counsel claim they did not miss the class certification deadline because the parties were focused on settlement.[79] Class counsel claimed this Court stayed the action pending settlement. The Court only stayed the action after it had been placed in a trial pool and the class certification deadline had passed.[80] However, without evidence that class counsel did not file for preliminary class certification by the deadline for reasons other than settlement negotiation, failure to file preliminary class certification on its own is not sufficient to show inadequacy.[81]

Finally, Objectors allege that class counsel devoted "inadequate resources to this action," spending only 672.9 hours on the case.[82] Class Counsel claims the number of hours resulted from a decision to stay merits discovery to preserve insurance proceeds for the class once Defendant notified Plaintiffs of its financial situation.[83] While class counsel limited excessive

---

[77] Mem. Supp. Melville Mot. Obj. at 34 [Doc. No. 105-1].

[78] Order Den. Pl.'s Mot. for Extension [Doc. No. 69].

[79] Mem. Supp. Mot. Final Approval at 40 [Doc. No. 122-2].

[80] Order to Stay [Doc. No. 81].

[81] Objectors cite *Vinson* for their claim that missing a class certification deadline evidence inadequacy by class counsel. WL 1774073 at *2. However, this case was analyzing a pattern and practice of counsel, involved a case where class counsel late filed class certification, and the suit did not result in successful settlement negotiations. *Id*. at *24-25.

[82] Mem. Supp. Melville Mot. Obj. at 34-35 [Doc. No. 105-1].

[83] Mem. Supp. Mot. Final Approval at 40 [Doc. No. 122-2].

time on the case,  Objectors point to no evidence of inadequate representation as a result. Objectors' various arguments do not overcome the presumption of adequacy of class counsel.

Objectors also specifically object to class counsel and Mr. Callery's adequacy based on the "longstanding relationship" between Mr. Sweeney and Mr. Callery.[84] Objectors did not establish an inappropriately close relationship between class counsel and Mr. Callery.[85] This history between Mr. Sweeney and Mr. Callery does not disqualify either from being adequate class counsel or an adequate class representative.

In certifying a class under 23(a), class counsel are presumed adequate, Objectors' complaints about class counsel do not overcome this presumption, and class counsel's experience in complex commercial litigation is sufficient to surpass Rule 23(a)'s bar for adequacy. Class counsel have adequately represented the class.

_Adequacy of Class Representatives_

Plaintiffs must demonstrate that the class representative has "a minimal degree of knowledge about the case and [has] no conflict of interest with class counsel and the members of the class."[86]

---

[84] Mawhinney Obj. at 5 [Doc. No. 106-1].

[85] While Mr. Sweeney had represented Mr. Callery in various minor cases since 2009 and Mr. Callery would consult him for occasional representation, this occasional representation was common in Chester County, Pennsylvania. Final Approval Hr'g Tr. at 48-51 [Doc. No. 131]. The two men would get lunch and had split the bill, neither was buying meals for the other. _Id._ at 49-50. This relationship is not the kind of longstanding personal friendship that would raise "serious concerns as to [the plaintiff's] adequacy to represent the instant class." _Mowry v. JP Morgan Chase Bank, N.A_, No. 06-4312, 2007 WL 1772124 at *4 (N.D. Ill. June 19, 2007). _ee also Center City Periodontists, P.C. v. Dentsply Int'l Inc_., 321 F.R.D. 193, 208 (E.D. Pa. July 24, 2017) (rejecting class representatives as inadequate based on a twenty-five year relationship between plaintiff's counsel and the class representative where the two regularly kept in touch despite living on opposite coasts and counsel assured the class representative he would do anything he could to help with the lawsuit).

[86] _Duncan_, 48 F.4th at 209 (citing _In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig._, 967 F.3d 262, 272 (3d Cir. 2020)).

Mr. Callery and Ms. Fasano are adequate class representatives. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[87] "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."[88]

Intraclass conflicts do not all render class representation inadequate.[89] To defeat the adequacy presumption, an intraclass conflict must be fundamental.[90] A conflict is fundamental where "some [class] members claim to have been harmed by the same conduct that benefitted other members of the class"[91] or it touches "the specific issues in controversy."[92]

> The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and that there is no conflict between the individual's claims and those asserted on behalf of the class.[93]

Objectors allege that the class representatives are inadequate because: (1) Mr. Callery has an alleged close relationship with counsel; (2) Mr. Callery and Ms. Fasano would be subject to repercussions from a RICO filing; (3) Ms. Fasano was not added as a named plaintiff until after the parties moved for preliminary approval; (4) Mr. Callery and Ms. Fasano do not have standing to settle Connecticut consumer protection claims as Pennsylvania residents; and (5) Objectors

---

[87] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citing *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

[88] *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (internal quotation marks omitted).

[89] *Id.*

[90] *Id. See also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

[91] *Dewey*, 681 F.3d at 184 (citing *Valley Drug Co.*, 350 F.3d at 1189).

[92] *Id.* (citation omitted).

[93] *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1998); *see also In re Cnty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010).

allege a separate class representative was required to adequately represent variable rate customers.[94]

First, as explained, Mr. Callery's relationship with counsel is professional in nature and does not make Mr. Callery an inadequate class representative.

Second, the RICO filing does not create such compelling incentives for counsel and plaintiffs to enter into a bargain that is so unfavorable to the class.[95] This objection is ultimately a complaint that there is a conflict between class representatives and the class, but this is not a fundamental conflict. Objectors do not identify concrete incentives for class representatives that conflict with the interests of the class such that Mr. Callery and Ms. Fasano are benefitted by actions that harm the class. Notably, Objectors do not provide any legal or factual support for their claim that the RICO filing created a "strong incentive . . . to seek a quick exit."[96]

Third, Ms. Fasano is not inadequate for joining as a named plaintiff after the Agreement was executed and preliminary approval filed because Ms. Fasano did not represent a subclass that required separate representation.[97]

Fourth, the named plaintiffs do not need standing to settle Connecticut law claims because there is no requirement that there be named plaintiffs from every state, and the claims were not primarily brought under Connecticut law. *Frasier v. Stanley Black & Decker, Inc.*, does not establish that a class action must have named plaintiffs from every state where claims may be included in the settlement because its ruling relies on Connecticut state class action law and deals

---

[94] Mawhinney Obj. at 7-12 [Doc. No. 106-1].

[95] *Baum v. Ability Recovery Servs., LLC*, No. 17-CV-5799, 2018 WL 4852048, at *10 (E.D.N.Y. Sept. 27, 2018).

[96] Mawhinney Obj. at 8 [Doc. No. 106-1].

[97] *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).

with a motion to strike, rather than class certification.[98] Further, *Frasier* is not binding precedent

on this Court and it conflicts with class action precedent in this circuit, which has not required

named plaintiffs from every state where a claim may be raised.[99]

    Finally, Mr. Callery and Ms. Fasano can adequately represent variable rate customers.

Ms. Fasano had purchased both variable and capped rate contracts, so she could represent the

interests of variable rate customers. Subclasses are appropriate "[w]here a class is found to

include subclasses divergent in interest."[100] Subclasses, however, are not required here. All

claims covered by the settlement are claims for economic damages, i.e. the cost differential

between the expected and charged oil prices.[101] All class members have present, not future,

claims.[102]

    *Amchem* noted that when "adversity among subgroups" requires that subclasses be

established, a court cannot approve a settlement without creating subclasses on the basis of the

consent of the class representatives.[103]

> The class representatives may well have thought that the Settlement serves the
> aggregate interests of the entire class. But the adversity among subgroups requires
> that the members of each subgroup cannot be bound to a settlement except by

---

[98] 109 F. Supp. 3d 498, 505 (D. Conn. 2015). Frasier held that a Rule 23 class action under the Connecticut Unfair Trade Practices Act ("CUTPA") could not be brought by a non-Connecticut resident because Connecticut's state law limiting non-residents' standing to bring a class action suit is so "intertwined" with the statutory remedy CUTPA creates. *Id*. This reasoning relies on Justice Stevens' concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010). The law of this circuit does not require this Court find that Connecticut state class action law takes precedence over Rule 23.

[99] *See generally In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (approving class action settlement that settled potential cases under the laws of many states without requiring named plaintiffs from every state).

[100] *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 271 (3d Cir. 2009); *see also Ortiz*, 527 U.S. at 856 (explaining that *Amchem* requires a "class divided between holders of present and future claims" to be "divi[ded] into homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel").

[101] *See In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 344 (3d Cir. 2010) (finding subclasses were not needed when all claims were for economic damages).

[102] *See id*.

[103] *Amchem*, 521 U.S. at 627.

consents given by those who understand that their role is to represent solely the members of their respective subgroups.[104]

While class representative Ms. Fasano has both capped and variable price contract injuries, Objectors have not identified adverse interests that would require the establishment of subclasses such that Ms. Fasano cannot adequately represent variable price customers.

Objectors failed to raise, or describe, any divergent or antagonistic interests between the groups, as is required for subclasses to be mandated.[105] Objectors' argument that subclasses are required rests solely on the fact that the Settlement Agreement creates "a tiered structure that distinguishes between the claims of capped price customers . . . and the more valuable claims of variable price customers."[106] The differential relief between different groups of class members does not demonstrate that there are conflicting or antagonistic interests within the class.

The remedial interests of class members with variable price claims are represented by class representatives with both variable and capped price claims, and the settlement provides for these claims. Class members with only variable price claims do not receive less value for identical claims asserted by other class members.

Class representatives have no conflict of interest with other members of the class, even if there is slight variation of their claims. Following the Final Approval Hearing, the Court is satisfied with Plaintiffs' evidence regarding the degree of involvement from class representatives in this litigation.  The Court concludes they are adequate class representatives. Plaintiffs have met their burden of satisfying the requirements for class certification under Rule 23(a).

---

[104] *Id.* (quoting citation omitted).

[105] *Ins. Brokerage Antitrust Litig.*, 579 F.3d at 272 ("[S]ubclasses are only necessary when members of the class have divergent interests.").

[106] Mawhinney Obj. at 9 [Doc. No. 106-1].

## C. Rule 23(b)

The Court must find that the settlement class satisfies as least one of the three requirements listed in Rule 23(b).[107] Here, the relevant factor is whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[108] In the Third Circuit, Rule 23(b)(3) also requires that class be "currently and readily ascertainable based on objective criteria."[109] This ascertainability requirement is two-fold: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[110]

The Court finds that the settlement class satisfies Rule 23(b). The alleged behavior of HOP Energy in using the term "prevailing retail price" in misleading ways was common to all members of the class and all class members were harmed in regard to the cost of heating oil.[111] Plaintiffs have shown that for the purposes of settlement, a class action is a fair and efficient way to resolve the dispute in light of "alternative available methods of adjudication."[112] Tens of thousands of individual actions would not be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlement.[113]

---

[107] *Wal-Mart Stores, Inc.*, 564 U.S. at 345.

[108] Fed. R. Civ. P. 23(b)(3).

[109] *In re Niaspan Antitrust Litig.*, 67 F.4th 119, 129-30 (3d Cir. 2023) (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

[110] *Hargrove*, 974 F3d. at 469–70 (quoting *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015)).

[111] *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

[112] *In re Warfarin*, 391 F.3d at 534 (citations omitted).

[113] *McDermid v. Inovio Pharms., Inc.*, No. 20-1402, 2023 WL 227355, at *3 (E.D. Pa. Jan. 18, 2023) (citations omitted).

**Predominance**

Rule 23(b)(3) permits an op-out class to proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]"[114] Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[115] "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."[116]

Plaintiffs assert that predominance has been met because all of the claims depend on the interpretation of the term "prevailing retail price" and whether Defendant used the term in a misleading way, and therefore the interpretation of "prevailing retail price" predominates over individual inquiries.[117]

Objectors argue that there is no reliable mechanism for excluding uninjured customers, which they argue is necessary to find predominance.[118] Plaintiffs explained at the Final Approval Hearing that uninjured customers were already excluded from the class.[119] People who only bought via cash on delivery or people who only bought fixed prices are not included in the class. Customers who did not make a purchase under the "prevailing retail price" are not class

---

[114] Fed. R. Civ. P. 23(b)(3).

[115] *Amchem*, 521 U.S. at 623.

[116] *Sullivan*, 667 F.3d at 298.

[117] Mem. Supp. Mot. Final Approval at 20 [Doc. No. 122-2].

[118] Mem. Supp. Melville Mot. Obj. at 31-32 [Doc. No. 105-1]; *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 157 (3d Cir. 2023) (reversing and remanding class certification for presentation of evidence enabling the District Court to estimate "how many class members (or what proportion of them)" have standing and evaluating the burden of satisfying standing by the class members). Objectors cite *Huber* in their challenge of commonality, but commonality was found in *Huber* despite the need for remand to develop evidence of unnamed class members' standing. *Id*. at 156.

[119] Final Approval Hr'g Tr. at 17 [Doc. No. 131].

members.[120] Accordingly, the class does not exclude uninjured class members because there are no uninjured class members.[121]

## Ascertainability

In the Third Circuit, Rule 23(b)(3) also requires that the class be "currently and readily ascertainable based on objective criteria."[122] Here, the class is currently and readily ascertainable based on HOP Energy's records, where every member of the class will be pulled from their customer database.[123] The class has been defined thoroughly and with objective criteria such that the class is appropriately defined. Plaintiffs' counsel has possession of Defendant's database and can notify all class members without a claims process.[124]

## Superiority of Adjudication

As directed by Rule 23(b)(3), the Court has considered:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and]
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. . . .[125]

Rule 23(b) "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication."[126] Plaintiffs are required to show under Rule 23(b)(3) that class treatment is superior to other methods for achieving a

---

[120] *Id.* at 17, 31.

[121] *Id.* at 108:11-19

[122] *Niaspan Antitrust Litig.*, 67 F.4th at 129-30 (quoting *Hargrove* 974 F.3d at 477).

[123] Final Approval Hr'g Tr. at 34 [Doc. No. 131].

[124] *Id.*

[125] Fed. R. Civ. P. 23(b)(3).

[126] *In re Warfarin*, 391 F.3d at 533-34.

"fair and efficient" adjudication of the controversy.[127] This requirement essentially asks a court to analyze the class members' interests in pursuing a class action versus joinder and individual actions, the extent of litigation already begun by class members, the benefit of litigating in one forum, and the difficulty of managing a class action.[128]

The claims at issue here are small scale amounts for a large amount of people—exactly the format class actions are intended to adjudicate. The class members have not significantly demonstrated that they have an interest in individually resolving their claims against the Defendants. Of the 50,000 putative class members that received notice regarding the settlement, only four class members have objected and only six class members have opted out.[129]

The Court considers the litigation commencing in the *Melville* and *Mullaney* cases. Objectors argue that the settlement violates the *Melville* court's interim class counsel order and that class counsel have made misrepresentations based on that order. *Melville*'s order appointed interim class counsel to ensure the putative classes in *Melville* and *Mulaney* would be adequately represented in any settlement involving *Callery*. Interim counsel represented Melville and Mullaney at global settlement discussions, but the parties could not come to an agreement. Because interim counsel turned down any global settlement agreements before Judge Welsh, Plaintiffs and Defendants engaged in mediation before Judge Giles and came to the present settlement agreement. Objectors now complain that they missed out on this mediation.

The Court is not persuaded by Objectors' argument for two reasons. First, the order did not prohibit Plaintiffs and Defendant from engaging in settlement discussions without interim

---

[127] Fed. R. Civ. P. 23(b)(3).

[128] *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 07-md-1871, 2024 WL 6684343, at *6 (E.D. Pa. Nov. 24, 2014); *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 253 n.11 (3d Cir. 2016).

[129] Mem. Supp. Mot. Final Approval at 26-27 [Doc. No. 122-2].

class counsel. No court order was violated. Second, Objectors cannot seek to block settlement of a first-filed, more expansive class action because they chose to halt global settlement negotiations. Objectors cite no case law and make no assertion why this Court must follow an Order entered in a case separate from this one, in an entirely different district, when the first-filed rule determines that this Court is the appropriate venue for this case. As discussed, the *Callery* class encompassed the *Melville* classes from the beginning. There was no "reverse auction" or nefarious action resulting in this settlement. All parties engaged in global settlement negotiations, they did not come to an agreement, and Plaintiffs and Defendant subsequently came to this settlement through mediation. Considering the extent and nature of any litigation concerning the controversy already commenced by members of the class, a class action in this forum is the superior method of adjudication. All putative victims of HOP Energy's practices are encompassed by this settlement.

Superiority is satisfied here because the proposed settlement class avoids thousands of potential lawsuits and enables the fast processing of Plaintiffs' claims. The class consists of over 50,000 persons who, in the absence of this settlement, may attempt to file individual claims for uncertain compensation. Tens of thousands of individual actions would not be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlement.[130]

After careful consideration, the Court certifies the Settlement Class for purposes of the final settlement.

---

[130] *McDermid*, 2023 WL 227355, at *3 (citations omitted).

## III.  NOTICE

As part of the preliminary approval of the settlement, the Court directed that notice be provided.[131] The notice for the settlement clearly and concisely states in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).[132]

Notice was made through postcard notice, email notice to all class members for whom Defendant has an email address, and on a dedicated website.[133]

Plaintiffs provided evidence of the number of class members, determining that a total of 50,035 unique class members existed based on HOP Energy's records.[134] Verita Global, LLC was appointed as Settlement Administrator and caused short form notice to be sent to all members on the class list.[135] Short form notice was both mailed and emailed where valid email addresses were available.[136] A settlement website, toll-free telephone number, and an email address are maintained to provide information about the settlement.[137]

Objectors argue that notice to class members was inadequate because (1) the notice did not mention the "primary fact" driving the settlement was HOP Energy's weak financial

---

[131] Order Prelim Approval [Doc. No. 91].

[132] Fed. R. Civ. P. 23(c)(2)(B).

[133] Mem. Mot. Final Approval, Ex. C, Angelique Dizon Decl. ¶¶ 1-8 [Doc. No. 122-6].

[134] *Id*. ¶¶ 1-5.

[135] Order Prelim. Approving [Doc. No. 91].

[136] Mem. Mot. Final Approval Ex. C, Angelique Dizon Decl. ¶¶ 5-6 [Doc. No. 122-6].

[137] *Id*. ¶¶ 7-8.

position; (2) that the notice "suggests that this case is only about the variable rate customers" and the postcard and email notices do not use the word "capped"; (3) the notice does not disclose how class members will be divided into categories "and will receive between $7.33 and $40.34 and that the majority will receive between $14.67 and $29.34," and does not clearly state payments to be received, and the long form notice contains misleading information about pro-rata distribution; and (4) Objectors argue Plaintiffs could have structured payments on a *pro-rata* basis so class members are not treated equitably relative to each other.[138]

Rule 23(c)(2) does not require exact details of how settlements will be calculated and distributed, nor does it require notice to class members of the reasoning for coming to a settlement. Objectors claim that the notice is "misleading" regarding the term "variable rate" in the notice. Yet, both the short form and email notice clearly stated the class and used the terms "capped price" and "variable" price.[139] The long form notice does use the term "*pro-rata* share" to describe monetary relief for class members.[140] However, the notice accurately states that the "*pro-rata* share" will be based on "the number of gallons of heating oil delivered by HOP, the price(s) charged by HOP for such delivery(ies), and/or the type of contract that the Class Member entered into with HOP."[141] There is sufficient accurate information in the short form, email, and long form notices, as well as on the website to ensure class members received accurate notice.[142] Objectors' claim that the settlement could have been distributed on a pro-rata

---

[138] Suppl. Obj. at 11-13 [Doc. No. 126].

[139] *Id.* at 8-10. Objectors claims that the word "capped" was not present is entirely baseless. In plain language under the "Who Is Included?" section of the notice, both capped price and variable rate customers are clearly described.

[140] Attachment A, available at *Case Documents*, *Brian Callery et al. v. HOP Energy, LLC* (last visited Nov. 19, 2025), https://www.heatingoilclassaction.com/case-documents.aspx (https://perma.cc/2BPQ-6K5M).

[141] *Id.*

[142] *See Gorgonzola v. Dir. U.S. Off. Pers. Mgmt.*, No. 22-1942, 2023 WL 1478999, at *6 (3d Cir. 2023) (citing *In re NFL Litig.*, 923 F.3d at 110; *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180) (explaining that notice to a class should provide sufficient information to class members so they can make informed decisions).

basis is not a proper objection to notice, but rather to the substantive fairness of the settlement and will be addressed under Rule 23(e).

Objectors also argue that many class members may not have been notified, and the class definition appears broader than those who received notice.[143] Plaintiffs presented evidence that the entire class was notified based on HOP Energy's records of sales and contracts. There are no substantiated allegations of missing class members who would not be recorded in HOP Energy's database. Previous estimations that the class was larger were based on pre-discovery and discovery conducted in the *Melville* case, where HOP Energy initially disclosed potential class members, including uninjured customers, who have since been removed as non-class members.[144] After conducting a review and hiring an outside firm to conduct a review of its database to determine the precise number of class members, HOP Energy determine the correct number of class members, including only those who were injured.

The notice to class members was sufficient and satisfies Rule 23(c).

## IV.   SETTLEMENT FAIRNESS – 23(E)

### A.  Legal Standard

Under Federal Rule of Civil Procedure 23(e), in order for a class action to settle, the court must approve the settlement. If the settlement is "fair, reasonable, and adequate," the settlement is given final approval.[145] The Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate taking into account:
> (i) the costs, risks, and delay of trial and appeal,
> (ii) the effectiveness of any proposed method of distributing relief to the class . . .;
> (iii) the terms of any proposed award of attorney's fees . . .; and

---

[143] Suppl. Obj. at 4 [Doc. No. 126].

[144] *Id.*; Final Approval Hr'g Tr. at 25-26 [Doc. No. 131].

[145] Fed. R. Civ. P. 23(e)(2).

(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.[146]

A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[147]

*Girsh v. Jepson* sets out nine factors for the Court to consider when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[148]

The existence of a settlement diminishes some of the considerations of Rule 23; as a settlement negates the need for trial, concerns regarding manageability and other factors that would only apply in a trial context are less relevant to the certification analysis.[149]

### B. Discussion

As discussed, class representatives and class counsel adequately represented the class. The class representatives are experienced in complex litigation, if not class action litigation. Further only four members of the class of over 50,000 members objected, and only six opted out. There was also sufficient discovery conducted to enable the parties to achieve a settlement. Once HOP Energy disclosed its financial position further, discovery was stayed and the parties focused

---

[146] *Id.*

[147] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 1998)).

[148] 521 F.2d 153, 157 (3d Cir. 1975) (quoting citation omitted) (cleaned up).

[149] *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *Amchem*, 521 U.S. at 627.

on settlement. Parties conducted both formal discovery and informal exchange of information in an attempt to calculate damages and assess liability.

<u>Negotiations at Arm's Length</u>

Negotiations occurred at arm's length through mediation by the Honorable Judge Welsh and the Honorable Judge Giles. While Objectors allege Plaintiffs and Defense engaged in a "reverse auction," there is no evidence to support such allegations. Objectors' counsel were not left out of negotiations as they did participate in mediation with Judge Welsh. However, they failed to remain in contact with Judge Welsh. Negotiations for a global settlement between Plaintiffs, Defendant, and Objectors were then closed without a settlement. Plaintiffs and Defendants later resumed negotiations with Judge Giles. The negotiation was sufficiently at arm's length. Objectors were not the victims of a reverse auction.

<u>Adequacy of Relief</u>

The settlement amount is $2,627,430, subject to a holdback reserve of $300,000 which has since been used to pay defense costs between the date of the Settlement Agreement and final approval. Class Members will be divided into three groupings: (1) "Capped Customers," those who were charged their contract price but contend that they should have been charged HOP's COD price; (2) "Variable Customers," those who were charged HOP's Variable Price but contend that they should have been charged HOP's COD price; and (3) "Promotional Customers," those who were charged HOP's Variable Price but contend that they should have been charged a lower, Promotional Prevailing Price.[150] "Promotional Customers receive more points than Variable Customers, who receive more points than Capped Customers."[151] Class

---

[150] Mem. Mot. Prelim. Approval at 8 [Doc. No. 85-1].

[151] *Id.*

Members will receive a payment without being required to submit a claim form, as all potential Class Members are in Defendant's customer records.

The relief the settlement is expected to provide class members is adequate when balanced against:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).[152]

In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, continued discovery, the exclusion of evidence, and potential trial and appeals would only delay, and potentially diminish, any recovery class members may receive. HOP Energy has not conceded liability, and continued litigation poses a potential risk of failure at trial.[153]

HOP Energy contends that its weak financial situation puts it on the verge of bankruptcy, and that it cannot withstand a greater judgment against it. Here, the entirety of the settlement is funded from an insurance policy, from which HOP Energy's litigation fees are also paid. The insurance fund was initially $5 million, and now has been reduced to the $2,627,430 settlement amount. HOP Energy claims that since the Settlement Agreement was made, it has used the entire holdback amount of $300,000 and consumed an additional $200,000 in litigation costs. While HOP Energy initially wished these additional costs be paid from the settlement fund, it has withdrawn that request and indicated that HOP Energy will cover these costs out of pocket.

---

[152] Fed. R. Civ. P. 23(e)(2)(C).

[153] Final Approval Hr'g Tr. at 105 [Doc. No. 131].

Plaintiffs allege HOP Energy could not withstand a greater judgment against it because its financial situation is deteriorating, and a greater judgment could require Chapter 11 bankruptcy reorganization.[154] Because the class members are unsecured creditors with unliquidated claims, reorganization or liquidation could leave them with potentially no method of recovery because HOP Energy has a secured debt of $120 million.[155] The Court is satisfied with Plaintiffs' and HOP Energy's representations regarding HOP Energy's financial situation such that the present settlement was a result of legitimate concerns about ability to withstand a greater judgment.

Objectors claim the Settlement Amount is inadequate to provide relief for the class. They argue that the proposed Settlement Amount is insufficient for three reasons: (1) Objectors believe HOP can contribute money beyond its insurance purposes to the settlement; (2) counsel's actions have prejudiced the class; (3) the reserve for the class ends up paying HOP.[156]

Objectors argue that HOP, at one point during global settlement negotiations, was willing to contribute to the settlement beyond its insurance policy. At the Final Approval Hearing, Plaintiffs clarified that after global settlement negotiations, a new board was installed by HOP Energy's secured lender TCW.[157] With this new control of HOP Energy by TCW, the company was no longer willing to contribute to settlement beyond the insurance fund.[158] The Court is satisfied that HOP Energy's financial situation reasonably supports Plaintiffs assertions that HOP

---

[154] Mem. Supp. Mot. Final Approval at 7-8, 28-29, 34-35 [Doc. No. 122-2]; Final Approval Hr'g Tr. at 32, 110 [Doc. No. 131].

[155] Mem. Supp. Mot. Final Approval at 7-8 [Doc. No. 122-2].

[156] Mem. Supp. Melville Mot. Obj. at 15 [Doc. No. 105-1].

[157] Final Approval Hr'g Tr. at 42-43, 84-85 [Doc. No. 131].

[158] *Id*. at 42-43, 84-85, 92.

Energy could not withstand a greater judgment without jeopardizing class members' potential recovery.

Objectors argue class counsel prejudiced the class by relying on HOP Energy's representations that its lenders are unwilling to fund a settlement. Objectors claim the lenders' statements should be regarded as a "negotiating position, not a statement of fact." This Court is not evaluating the negotiating skill of the parties, it is evaluating the substantive fairness of the agreement. It is not unreasonable for Plaintiffs to believe HOP Energy's concerns about bankruptcy and restructuring are legitimate. Objectors' attacks on class counsel's advocacy do not make the settlement substantively unfair. Counsel were adequate, even if Objectors would have negotiated differently.

Finally, Objectors argue the settlement is inadequate because it pays the legal fees of HOP Energy and the risk of the diminishing settlement is borne by the class and not class counsel. Objectors' concerns here are legitimate. However, HOP Energy agreed to pay any legal fees beyond the $300,000 holdback amount from funds beyond the insurance agreement.[159] The class members do not bear the cost of continued litigation costs beyond the initial holdback amount. Additionally, this Court has discretion to deny class counsel's request for one third of the initial settlement amount in attorneys' fees. While attorneys' fees are considered in the substantive fairness evaluation, this Court may adjust the award as it sees fit. The request for attorneys' fees will not doom the settlement when it is otherwise substantively fair.

The settlement is also adequate when balanced against the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

---

[159] Mem. Supp. Mot. Final Approval at 2 n.2 [Doc. No. 122-2]; Final Approval Hr'g Tr. at 94 [Doc. No. 131].

claims. Class members will not need to submit a claim in order to obtain recovery. This process streamlines the claim process and simplifies the method of distributing relief.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other. The settlement funds will be distributed according to an algorithm categorizing class members on the type of contract they purchased and the amount of oil purchased. Class members who were overcharged more, and suffered greater harm, will recover more than people who were overcharged less, and suffered lesser harm. The settlement treats class members equitably relative to each other.

## V. ATTORNEYS' FEES, NAMED PLAINTIFF AWARDS, AND OTHER DISBURSEMENTS

Plaintiffs seek the following disbursements from the settlement amount: (1) attorneys' fees of one-third the maximum settlement amount; (2) $40,707.39 in litigation expenses; (3) a Named Plaintiff Enhancement Award for Mr. Callery of $10,000; and (4) a Named Plaintiff Enhancement Award for Ms. Fasano of $5,000.

The Third Circuit requires "a thorough judicial review of fee applications" in class action settlements.[160] There are two methods for calculating attorneys' fees: (1) the percentage-of-recovery method; and (2) the lodestar method.[161] "The percentage-of-recovery method is generally favored in cases involving a common fund."[162] When a settlement uses a percentage-of-recovery, the court is required to "make a 'reasonable estimate' of the settlement's value."[163]

---

[160] *In re Prudential Ins. Co. Amer. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).

[161] *Id*.

[162] *Id*.

[163] *Id*. at 334.

The lodestar method is calculated "by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case."[164] In their Motion for Fees, class counsel presents a lodestar of $504,675, which provides a multiplier of 1.537 when cross checked with their percentage of recovery for determining attorneys' fees.[165]

In determining whether the percentage of recovery is appropriate, courts consider ten non-exhaustive factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.[166] These factors do not need to be applied in a formulaic fashion, and some factors may outweigh the rest.[167]

> [D]istrict courts, in awarding attorneys' fees, may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion. If the court beliefs that a fee reduction . . . is indicated, it must analyze the circumstances requiring the reduction and its relation to the fee, and it must make specific findings to support its action.[168]

---

[164] *Meigs v. Care Providers Ins. Servs., LLC*, No. 21-867, 2024 WL 21792, at *3 (E.D. Pa. Jan. 2, 2024).

[165] Mot. Attorney's Fees at 6 [Doc. No. 92]

[166] *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

[167] *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301 (citing *id.*).

[168] Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 253 (1985) (emphasis omitted) (citations omitted).

Upon careful consideration, the Court will approve Plaintiffs' request for attorneys' fees but reduce the fee to the presented lodestar amount.

Given the number of hours class counsel worked on the case, the risk of nonpayment to class members given the diminishing settlement fund and HOP's financial situation, the skill and efficiency of class counsel, and the lodestar amount, the Court determines that counsel's request for attorneys' fees and expenses up to one-third the amount of the settlement amount is not appropriate. Counsel spent only 672.9 hours on this case, or less than three hours per week on the action. Counsel's request for attorneys' fees of one-third the maximum settlement amount, rather than the net amount after the litigation holdback, also cuts into the recovery of class members. As class counsel explained, this settlement resulted from HOP's inability to withstand a greater judgment, so class members ability to recover damages is already limited by the settlement. The lodestar yields a multiplier of 1.537. Given counsel's performance in this action, the lodestar amount of $504,675 is a more appropriate award of attorneys' fees and expenses.

Given the size of the settlement amount, Mr. Callery's involvement in the case, and Ms. Fasano's late addition as named plaintiff, the requested Named Plaintiff Enhancement Awards are not appropriate. This Court will award Mr. Callery a Named Plaintiff Enhancement Award of $5,000 and Ms. Fasano a Named Plaintiff Enhancement Award of $2,500. The disbursement of $40,707.39 is appropriate for litigation expenses.

## VI.  CONCLUSION

Plaintiffs' motion for class certification will be granted and Plaintiff's request for attorneys' fees, litigation expenses, and named plaintiff service awards will be granted subject to the above reductions.

An order will be entered.

36